2012-JAN-23  12:07    FROM-ABC LEGAL SERVICES         +2132539413        T-168  P.011/011  F-673

1   Sean P. Reis - SBN 184004
    sreis@edelson.com
2   EDELSON MCGUIRE, LLP
    30021 Tomas Street, Suite 300
3   Rancho Santa Margarita, California 92688
    Telephone: (949) 459-2124
4   Facsimile: (949) 459-2123

5   *Counsel for Plaintiff and the putative Class*

6   *Additional counsel for Plaintiff appear on signature page*

7

8                   UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10  CHARLOTTE BAXTER, individually and on      Case No. **CV 12   0585-GAF**
    behalf of all others similarly situated,                    **(AGR)**
11
                    Plaintiff,                   **PLAINTIFF'S MOTION FOR CLASS
12                                               CERTIFICATION**

13  v.
                                                 Hearing Date: TBD   March 12, 2012
14  RODALE, INC., a Pennsylvania corporation,
                                                 Hearing Time: TBD   9:30 A.M
15                  Defendant.
                                                 Hon.  Gary A. Fees
16
                                                 Courtroom: 740
17
                                                       Roybal
18

19

20

21

22

23

24

25

26

27

28
                                       1

TO:     All parties and their counsel of record.

**PLEASE TAKE NOTICE THAT** on a date and at a time later set by the Court, Plaintiff Charlotte Baxter, by and through her undersigned counsel, will and hereby does respectfully move the Court for an Order certifying this case as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3). Even at this stage of the litigation, it is clear that Plaintiff's claims present a textbook case for class certification: California's "Shine the Light Law," Cal. Civ. Code §§ 1798.83, *et seq.*, requires that companies like Defendant Rodale, Inc. ("Rodale" or "Defendant") establish a procedure by which California customers can learn how Rodale discloses the customers' personal information to third parties (the "Shine the Light Disclosures"). Rodale fails to provide its customers with the Shine the Light Disclosures or means through which the disclosures may be obtained. Defendant's choice to deny its California customers their legal rights to learn what personal information is being disclosed, and who is receiving it, violates the Shine the Light Law with respect to each and every California resident who has provided personal information to Rodale.

As discussed further below, the proposed Class in this case meets each of Rule 23's requirements for class certification. The Class is easily ascertainable and its members are so numerous that joinder would be impractical. There are questions of law and fact common to each of the Class members' claims, and those questions predominate over any individual issues. Moreover, Plaintiff's claims are typical of those of the Class and she and her counsel have and will continue to fairly and adequately represent the interests of the absent Class members. Accordingly, for these reasons and as discussed more fully in Plaintiff's contemporaneously filed Memorandum in Support of Motion for Class Certification, certification of the proposed Class is appropriate.

**WHEREFORE**, Plaintiff Charlotte Baxter, individually and on behalf of all others similarly situated, respectfully requests that the Court (1) enter and reserve ruling on Plaintiff's Motion for Class Certification; (2) allow for and schedule discovery to take place on class-wide issues; (3) grant Plaintiff leave to file a memorandum in support of her Motion

1    for Class Certification upon the conclusion of class-wide discovery; (4) grant Plaintiff's

2    Motion for Class Certification after full briefing of the issues presented herein; and (5)

3    provide all other and further relief that the Court deems equitable and just.

4

5    Dated:  January 23, 2012               Respectfully submitted,

6

                                    **CHARLOTTE BAXTER,** individually and on

7                                      behalf of all others similarly situated,

8                                  By:     /s/  Sean P. Reis

9                                          One of Plaintiff's Attorneys

10   Sean P. Reis - SBN 184004
     sreis@edelson.com

11   EDELSON McGUIRE, LLP
     30021 Tomas Street, Suite 300

12   Rancho Santa Margarita, California 92688
     Telephone: (949) 459-2124

13   Facsimile: (949) 459-2123

14   Jay Edelson*
     jedelson@edelson.com

15   Rafey S. Balabanian*
     rbalabanian@edelson.com

16   Steven L. Woodrow*
     swoodrow@edelson.com

17   Ari J. Scharg*
     ascharg@edelson.com

18   EDELSON McGUIRE, LLC
     350 North LaSalle Street, Suite 1300

19   Chicago, Illinois 60654
     Telephone: (312) 589-6370

20   Facsimile: (312) 589-6378

21   *Pro hac vice application to be sought

22

23

24

25

26

27

28

Motion for Class Certification

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**I.     The Proposed Class.**

1.     Plaintiff seeks to certify this case as a class action on behalf of a Class defined as follows:

All California residents who have provided personal information to Rodale.[1] Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a request for exclusion, (4) the legal representatives, successors, or assigns of any such excluded person, and (5) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims against Defendant.

**II.    Fed. R Civ. P. 23's Requirements for Certification.**

2.     In determining whether to certify a class, the Court does not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). Instead, for purposes of considering a motion for class certification, the substantive allegations of the complaint are generally assumed to be true and it is also assumed that cognizable claims are stated. *See, e.g., United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010).

3.     A party seeking certification bears the burden of showing that the proposed class is ascertainable and meets each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001). Rule 23(a)'s four requisites to

---

[1]     Plaintiff anticipates the potential need to revise the class definition following the conclusion of discovery relating to class certification issues.

certification are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Additionally, Rule 23(b)(3) requires that common questions of law or fact predominate and that maintaining the lawsuit as a class action is superior to other available methods of adjudication. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Fed. R. Civ. P. 23(b)(2) allows for certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." A plaintiff must affirmatively demonstrate compliance with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

4. As shown below, the proposed Class in this case satisfies each of Rule 23(a)'s prerequisites and the requirements for certification under Rules 23(b)(2) and (b)(3).

## III. The Proposed Class Satisfies Rule 23(a)'s Requirements.

5. The numerosity requisite is satisfied when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no specific number required, nor is the plaintiff required to state the exact number of class members. *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007) (citing *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005)). Instead, numerosity is typically satisfied when the class is comprised of 40 or more members. *See id.* at 549; *see also Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332-34 (9th Cir. 1977) (184 class members satisfies numerosity). Additionally, "a court may rely on common sense assumptions to support findings of numerosity." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 660 (E.D. Cal. 2008) (citing *Manual for Complex Litig. (Fourth)* § 23.22(3) (2008)); *see also* 3 *Alba Conte & Herbert B. Newberg, Newberg on Class Actions* § 7.20, 66 (4th ed. 2001).

6. Though it is presently unclear exactly how many members comprise the Class, common sense would dictate that many thousands of California residents have subscribed to any one of Rodale's magazines and websites. Accordingly, the proposed Class satisfies the numerosity requirement. *See Newberg on Class Actions* § 3:5, 243-46 ("Class actions under

1  the amended Rule 23 have frequently involved classes numbering in the hundreds, or

2  thousands . . . In such cases, the impracticability of bringing all class members before the

3  court has been obvious, and the Rule 23(a)(1) requirement has been easily met.")

4        7.     The second threshold to certification under Rule 23(a) requires that "there are

5  questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is

6  present where a common nucleus of operative fact exists, even if as to one question of law

7  fact, and has often been found to require very little. *In re First Alliance Mortgage Co.*, 471

8  F.3d 977, 990-91 (9th Cir. 2006); *see also In re Static Random Access memory (SRAM)*

9  *Antitrust Litig.*, 264 F.R.D. 603, 611 (N.D. Cal. 2009). Ultimately, "[w]hat matters to class

10  certification . . . is not the raising of common 'questions'—even in droves—but, rather the

11  capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of

12  the litigation." *Dukes*, 131 S. Ct. at 2551 (citing Richard A. Nagareda, *Class Certification in*

13  *the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131-132 (2009)); *see also In re Static*

14  *Random Access memory Antitrust Litig.*, 246 F.R.D. at 611 ("When common questions

15  present a significant aspect of the case and they can be resolved for all members of the class

16  in a single adjudication, there is clear justification for handling the dispute on a

17  representative rather than an individual basis.")

18        8.     As alleged in this case, all members of the proposed Class share common

19  questions of fact that predominate over issues affecting only individual members of the class.

20  The common factual issues for the Class are: (1) whether each putative Class member is a

21  California resident; and (2) whether such putative Class members provided information to

22  Rodale during the relevant time period.

23        9.     The common factual questions lead to a legal question common to the Class:

24  whether Rodale is liable under the Shine the Light Law for its failure to include certain

25  disclosures on its website that are mandated by the Act. In particular, whether Rodale

26  violates the Act by (i) failing to display, in the first page of a link from its homepage, a

27  designated mailing address, e-mail address, telephone number, or facsimile number for

28

customers to deliver requests, and/or (ii) failing to describe, in the first page of a link from its homepage, its California customers' rights under the Shine the Light Law. *See* Cal. Civ. Code § 1798.83(b)(1)(B); (*See* "Home Page" and "Privacy Policy," true and accurate copies of which are attached hereto as Exhibits 1 and 2, respectively.) Simply put, there are no relevant factual differences between Class members, in terms of their own conduct, or Defendant's action, or inaction, with respect to the Class members. Accordingly, the commonality requirement is met.

10.     Rule 23 next requires that Plaintiff's claims be typical of those of the Class. Fed. R. Civ. P. 23(a)(3). Typicality "does not mean that the claims of the class representative[s] must be identical or substantially identical to those of the absent class members." 5 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 24.25 (3d ed. 1992); *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). Indeed, the existence of factual differences will not preclude a finding of typicality; the claims of a named plaintiff need only share the same essential characteristics as those of the class, "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. The test is whether other class members have the same or similar injury and whether the action is based on conduct that is not unique to the named plaintiffs. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (internal quotation omitted); *Newberg on Class Actions* § 3:13 at 327 (4th ed.).

11.     Moreover, the typicality requirement is closely related to the commonality requirement. *Cole v. Asurion Corp.*, 267 F.R.D. 322, 326 (C.D. Cal. 2010). Thus, as in this case, "a finding of commonality will ordinarily support a finding of typicality." *Barefield v. Chevron U.S.A., Inc.*, No. C 86-2427 TEH, 1987 WL 65054, at *5 (N.D. Cal. Sept. 9, 1987).

12.     Here, Plaintiff Baxter and the proposed Class suffered from a common course of conduct. Plaintiff, like each and every member of the Class: (1) had provided personal information to Rodale (i.e., signed up for a subscription to Rodale's magazine and/or website) and (2) is a California resident. (Compl. ¶¶ 30, 38.)

13.     As a result of Rodale's conduct, Plaintiff and the proposed Class were

Motion for Class Certification

damaged like each and every member of the Class in that they were denied the ability to exercise their legally prescribed right under the Shine the Light Law because of Defendant's failure to include the requisite disclosures on its website. (Compl. ¶¶ 32-35, 55, 56.)

14.     Accordingly, by pursuing her own claims, Plaintiff will necessarily advance the interests of the proposed Class in satisfaction of Rule 23(a)(3)'s typicality requirement.

15.     The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In this case, Plaintiff has the same interests as the other members of the proposed Class—she and each Class member were deprived of their statutorily proscribed privacy protections, and Defendant profited from sharing their personal information without giving them the ability to control or otherwise learn about the dissemination of that information. (Compl. ¶¶ 32-35, 54, 55.) As a result, and like the other members of the Class, Plaintiff's interests lie in enforcing her statutory rights under the Shine the Light Law, regaining a meaningful choice as to how her personal information is shared, and ensuring that Defendant corrects its conduct moving forward. Accordingly, Plaintiff has no interests antagonistic to the interests of the proposed Class. Therefore, Plaintiff will fairly and adequately protect the interests of the Class and her pursuit of the instant action demonstrates as much.

16.     Moreover, Plaintiff's counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have had extensive experience in consumer class actions involving similar issues that were of similar size, scope, and complexity as the present case. (*See* Firm Resume of Edelson McGuire, LLC, a true and accurate copy of which is attached as Exhibit 3.) Accordingly, both Plaintiff and her counsel will adequately represent the proposed class and Rule 23(a)'s final requisite to class certification is met.

## IV.     The Proposed Class Satisfies Rule 23(b)(2) and (b)(3)'s  Requirements.

17.     Once the subsection (a) prerequisites are satisfied, a plaintiff seeking certification under Rule 23(b)(2) or 23(b)(3) must satisfy several additional requirements.

Rule 23(b)(2) provides that the party opposing certification must have acted or failed to act on grounds generally applicable to the proposed Class, "so that final injunctive relief or corresponding declaratory relief is appropriate . . . ." Fed. R. Civ. P. 23(b)(2); *see also Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).

18.     In this case, Plaintiff's claims are typical of those of her fellow Class members. Plaintiff, like each and every member of the Class: (1) had provided personal information to Rodale (i.e., signed up for a subscription to a Rodale magazine and/or website) and (2) is a California resident. (Compl. ¶¶ 30, 38.) Furthermore, and like each and every member of the Class, Plaintiff was denied the ability to exercise her legally prescribed right under the Shine the Light Law because of Defendant's failure to include the requisite disclosures on its website. (Compl. ¶¶ 32-35, 55, 56.) Thus, Rodale acted on grounds generally applicable to the Class as a whole, making final injunctive relief necessary to protect Plaintiff and the proposed Class from such conduct in the future, and satisfying the requirements of Rule 23(b)(2).

19.     Rule 23(b)(3) provides that a class action may be maintained where the questions of law and fact common to members of the proposed Class predominate over any questions affecting only individual members. Fed. R. Civ. P 23(b)(3); *Pierce v. Cty of Orange*, 519 F.3d 985, 991 n. 5 (9th Cir. 2008); *see also Amchem*, 521 U.S. at 617. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022; *see also United Steel*, 593 F.3d at 808-09. In this case, if Plaintiff is correct that Defendant's failure to provide Shine the Light disclosures on its website gives rise to liability, then Defendant is identically liable to each and every member of the Class. Moreover, Plaintiff's UCL claim—which relies wholly on the statute's "unlawful" prong—rises or falls with Defendant's liability under the Shine the Light Law. As such, the legal questions in this case are identical for all Class members, and the common questions at issue in this case clearly

1    predominate over any individual issues that may exist.

2          20.    Rule 23(b)(3) further requires that the class action mechanism be superior to

3    the other available methods for the fair and efficient adjudication of the controversy. The

4    superiority requirement's purpose is one of judicial economy and assures that a class action is

5    the "most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land*

6    *Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010). "Where recovery on an

7    individual basis would be dwarfed by the cost of litigating on an individual basis, this factor

8    weighs in favor of class certification." *Id.*

9          21.    The instant class action is superior to other available methods for the fair and

10   efficient adjudication of the claims of Plaintiff and the Class. The injuries suffered by

11   individual Class members are likely to have been relatively small compared to the burden

12   and expense of individual prosecution of the litigation necessitated by Rodale's conduct.

13   Thus, absent a class action, it would be difficult, if not impossible, for the individual

14   members of the Class to obtain effective relief. Maintenance of this case as a class action is

15   also superior to other available methods because it would avoid the necessity for multiple

16   adjudications of identical legal and factual issues, thereby reducing the burden on the

17   judiciary.

18         22.    For the reasons stated above, and which will be borne out by class discovery,

19   this case is appropriate for class certification. Plaintiff hereby requests that the Court reserve

20   its ruling on the instant motion and allow for and schedule discovery to take place on class-

21   wide issues, at the conclusion of which, Plaintiff will file a fulsome memorandum in support

22   of this motion detailing the appropriateness of class certification and asking the Court to rule

23   at that time.[2]

24         **WHEREFORE**, Plaintiff Charlotte Baxter, individually and on behalf of the

25   proposed Class, respectfully requests that the Court (1) enter and reserve ruling on Plaintiff's

26   _____

[2]       Plaintiff reserves the right to amend the definition of the proposed class at the
27   conclusion of class-wide discovery.

28
Motion for Class Certification

Motion for Class Certification; (2) allow for and schedule discovery to take place on class-wide issues; (3) grant Plaintiff leave to file a memorandum in support of her Motion for Class Certification upon the conclusion of class-wide discovery; (4) grant Plaintiff's Motion for Class Certification after full briefing of the issues presented herein; and (5) provide all other and further relief that the Court deems equitable and just.

Dated:  January 20, 2012

Respectfully submitted,

**CHARLOTTE BAXTER**, individually and on behalf of all others similarly situated,

By:   /s/  Sean P. Reis
One of Plaintiff's Attorneys

Sean P. Reis - SBN 184004
sreis@edelson.com
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

Jay Edelson*
jedelson@edelson.com
Rafey S. Balabanian*
rbalabanian@edelson.com
Steven L. Woodrow*
swoodrow@edelson.com
Ari J. Scharg*
ascharg@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

*Pro hac vice application to be sought

Motion for Class Certification

# Exhibit 1









Open in browser    PRO version    Are you a developer? Try out the HTML to PDF API

New hot app:  Facebook Albums To PDF

pdfcrowd.com

Exhibit 1 - Page 1

open in browser PRO version   Are you a developer? Try out the HTML to PDF API




## Ask the Sports Doc
"Who says trail runners--and ultrarunners, in particular--can't run smoking fast road marathons?"

## Dean's Blog
"I was told running causes irreparable damage to our bodies, do you have any details on this?"

## Ask Coach Jenny
"According to a MapMyFITNESS survey, Minneapolis came out on top of the fittest large cities."

## Training Daily
When training through pregnancy, it's important to listen to your body and remember you're running for two.

## For Beginners Only
Too many folks are overtraining. Here's how to tell if you're one of them and change for the better.

"Months ago I signed up for an 8K but never made it to the race. How can I build my race confidence?"

See All Blogs

## POLL
How often do you buy new running gear?

- Once a week
- Once a month
- Once a season
- Whenever I meet a goal or want to treat myself
- Only when I need it

VOTE

See Results Without Voting

## USER BLOGS FROM THE LOOP

Negativity is sometimes a good thing
By Pug Runner
1/17/2012 8:00 PM CST

---

## VIDEO


### Women's Press Conference
Shalane, Desi, & Kara talk about what it took in Houston to make the Olympic team.
PLAY


### Pain In The Butt?
Use these 5 simple yoga posses to relieve post-run pain in the posterior.
PLAY



### Men's Press Conference
Watch Meb, Hall and Abdi address the press as the 2012 Olympic team.
PLAY

Learn more

## FEATURES

### OLYMPIC TRIALS
2012 Trials: Basic Facts
10 Women to Watch
11 Men to Watch

### TRAINING
IronStrength Workout
Return to Base
"This Year I Will..."

### NUTRITION & WEIGHT LOSS
Alternate Sides
Quick, Creamy Spinach-Mushroom Lasagna




---



FLOAT LIKE A...

RUN HAPPY

BROOKS
ADVERTISEMENT

## Race Finder
City
State/Province:   All
Zip Code:
Race Distance:   All Distances
More Options
GO

## Free Newsletters
Sign up today for exclusive Runner's World content.

- Training & Nutrition
- Women's Running
- Beginners
- Quote of the Day

Sample Newsletter

Enter your email address
SIGN UP

Your Privacy Rights

Exhibit 1 - Page 2

Open in browser PRO version    Are you a developer? Try out the HTML to PDF API    New hot app: Facebook Albums To PDF    pdfcrowd.com







## RW STORE

### Runner's World Branded Apparel
We worked with Running Warehouse to develop this line of soft, comfortable cotton tees.

### Going Long
More than 40 gripping stories of "legends, oddballs, comebacks, and adventures."

Find Runner's World at These Specialty Retailers

GOING LONG

**Brick - House, and Opium**
By: GruveB
1/17/2012 7:59 PM CST

**5 on Top with 3 on Bottom**
By: Tree Girl
1/17/2012 6:38 PM CST

---

**Small Wonders**

**SHOES & GEAR**
Inside Job
Running Watch Reviews
Winter 2011 Shoe Guide

**INJURY PREVENTION**
Prevent Postrun Butt Pain
Health Check
Are You Fit to Run?

**ARTICLES BY ISSUE**
January 2012
December 2011





## PROMOTIONS

GET MORE OUT OF LIFE

prius V





## SmartCoach
Click here to create your own personalized training plan.

## Shoe Finder

**Shoe Advisor**
Let us recommend shoes for you.

**Shoes Like Mine**
Find shoes like the ones you run in now.

**Advanced Search**
Find shoes based on your criteria.

GO

Exhibit 1   Page 3

Open in browser PRO version    Are you a developer? Try out the HTML to PDF API

visit the I want iWORC website and 500 lucky visitors will receive an exclusive mobile app download powered by Toyota Prius v.

## Get on the Inside Track

Visit Runner's World's new promo page, the Inside Track, to learn about the latest running giveaways, web sites, events, and more.



## Nike LUNARECLIPSE+

Push your limits, comfortably. LUNARECLIPSE+ with dynamic fit. Take Every Advantage.

## INNOVATION FOR ENDURANCE

Ready to take your training to the next level? Join the Innovation for Endurance community on Facebook for exclusive fitness content and a chance to win a 100% electric Nissan LEAF.



## Feel More With Less

Experience the PureProject by Brooks, a line of radically lightweight running shoes designed to naturally align your stride and empower every push-off. Now available in vibrant new colors.



FLOAT LIKE A...

Learn more

RUN HAPPY

ADVERTISEMENT




CLICK HERE

Customer Service    RSS Feeds    International    About Runner's World    Advertising    Privacy Rights/Community Guidelines    Manage Email Preferences

Rodale    Running Times    Bicycling    Men's Health    Women's Health    Prevention    Organic Gardening    Fitbie.com    Sitemap

400 South Tenth Street    Emmaus, PA 18098    (800) 666-2828    runnersworld.com/customer-service

To make a payment, cancel, or renew your subscription for Runner's World, contact customer service at:
runnersworld.com/customer-service    rwdcustserv@rodale.com

© 2012, Rodale Inc

pdfcrowd.com

Exhibit 1 - Page 4

Open in browser PRO version    Are you a developer? Try out the HTML to PDF API

New hot app: Facebook Albums To PDF

pdfcrowd.com

# Exhibit 2



# RODALE®

SEARCH

# Your Privacy Rights

*December 7, 2010*

*Protecting Your Privacy and Servicing Your Needs*

Rodale is a global media company with a heritage, mission, and authority dedicated to the health and wellness of the individual, community, and planet. Through a broad portfolio of leading media properties Rodale reaches more than 70 million people around the world through multiple distribution channels, including magazines, books, online, e-commerce, direct-to-consumer, and video:

| Men'sHealth | Prevention | Women'sHealth |
| RUNNERS | RUNNING TIMES | Bicycling |
| Biggest Loser Club | Gardening | RODALE books |
| RODALE.COM | EAT THIS, NOT THAT! | |

The company publishes some of the best-known health and wellness lifestyle magazines, including *Prevention*, *Men's Health*, *Women's Health*, *Runner's World*, *Running Times*, *Bicycling*, *Mountain Bike*, and *Organic Gardening*, and is the largest independent book publisher in the United States, with a collection of bestselling titles. Rodale brings you the ideas, insights, and information that inspire and enable people to improve their lives and the world around them. We're a family-run business that

open in browser PRO version    Are you a developer? Try out the HTML to PDF API    New hot app: Facebook Albums To PDF    pdfcrowd.com

Exhibit 2 - Page 1

values, integrity, and we are deeply committed to protecting your privacy and the security of the information you share with us.

We believe you have the right to know everything regarding the information we collect about you... how this information benefits you... and how you can say "no" to the use of any of this information.

This policy explains what we do with your information and what you can expect from Rodale. By using this site (the "Site"), you indicate your acceptance of Rodale's Privacy Policy.

## TABLE OF CONTENTS:

I.    Children Under 13

II.   Information Collection and Changes

III.  Your Privacy Rights/Transfers of Information

IV.   Mobile Devices

V.    Cookies/Web Beacons/Links

VI.   Policy Changes/Data Security

VII.  Rules for Submissions and Member Conduct

VIII. Rights/Copyrights

IX.   Contact Us

## Children Under 13:

We care about the safety of children. We won't knowingly allow anyone under 13 to provide us any personal identifying information. Children should always get permission from their parents before sending any information about themselves (such as, their names, e-mail addresses, and phone numbers) over the Internet to us or to anyone else. We encourage you to become involved in your children's on-line experience and to share your interest in our sites with your young ones.

## What information do you collect about me?

Rodale collects personal identifying information ("PII") from you only if you voluntarily submit such information to us on website(s) and through e-mail. We also collect PII during transactions, sponsored events, mobile marketing campaigns, and contests/sweepstakes. When visiting one of our online sites, we collect user-specific information on what pages are visited and volunteered information such as survey information and/or site registrations. PII includes your name, postal address, e-mail address, telephone and cell phone numbers, wireless service provider, and all other information you provide to us.

We may collect information about your interaction with Rodale sites and services. For example, we may use Web site analytics tools on our site to retrieve information from your browser, including the site you came from, the search engine(s) and the keywords you used to find our site, the pages you view within our site, your browser add-ons, and your browser's width and

open in browser PRO version    Are you a developer? Try out the HTML to PDF API    New hot app:  Facebook Albums To PDF    pdfcrowd.com

Exhibit 2 - Page 2

height. We may also use technologies, such as cookies, and web beacons (described below), to collect information about the pages you view, the links you click and other actions you take on our sites and services. Additionally, we may collect certain standard information that your browser sends to every website you visit, such as your IP address, browser type and language, access times and referring Web site addresses.

When you receive newsletters or promotional e-mail from Rodale, we may use web beacons (described below), customized links or similar technologies to determine whether the e-mail has been opened and which links you click in order to provide you more focused e-mail communications or other information.

In order to offer you a more consistent and personalized experience in your interactions with Rodale, information collected through one Rodale site or service may be combined with information obtained through other Rodale sites or services. We may also supplement the information we collect with information obtained from other companies.

## What's in it for me?

Plenty! The information we collect allows us to customize the content and/or layout of our page for each visitor. Plus, it enables us to notify you about updates to our Website... contact you with special offers of interest... and customize your Website experience. In addition, information is shared with reputable organizations that may contact you with special offers of possible interest.

## May I update my account and contact information?

Yes! Upon request, we will update your personal account information (e.g., customer number)... access your account status (outstanding balance)... and update your contact information (i.e., name, address, phone number). For more information or to update an account please visit http://www.rodaleinc.com/customer-service. If you prefer, you may write to us at Customer Service, Rodale Inc., 400 South Tenth Street, Emmaus, PA 18098.

## Your Privacy Rights

From time to time, we make your PII available to other reputable businesses whose products or services might be of value to you. If you do not want us to share your PII with other companies or organizations, please let us know by accessing the form at http://www.rodale.com/cs/privacy.html, by calling us at 866-387-0509, or writing to us at Customer Service, Rodale Inc., 400 South Tenth Street, Emmaus, PA 18098.

## What if I don't want commercial/promotional e-mail from Rodale?

Easy. If you do not want to receive commercial/promotional e-mail from Rodale, please let us know by updating your email preferences at (preferences.rodale.com), by utilizing the unsubscribe option available on e-mail communications , by calling us at 866-387-0509, or by writing to us at Customer Service, Rodale Inc., 400 South Tenth Street, Emmaus, PA 18098.

## Transfers of Information for Legal Purposes

Rodale Inc. may need to disclose certain information to comply with a legal requirement, such as a law, regulation, court order, subpoena, or search warrant, in the course of a legal proceeding or in response to a law enforcement agency request. If there is a change of control in Rodale's business (whether by merger, sale, or otherwise) or a sale or transfer of its assets, customer

Exhibit 2 - Page 3

open in browser PRO version    Are you a developer? Try out the HTML to PDF API

pdfcrowd.com

information could be sold or transferred as part of that transaction and your PII potentially used by the Purchaser or other recipient of said customer information.

You acknowledge that Rodale is located in the United States of America ("U.S.") and will process and store your information in the U.S., and that as a result, U.S. governments, courts or law enforcement or regulatory agencies may be able to obtain disclosure of your information through the laws of the U.S.

## Mobile Devices/Third Party Fees

From time to time, Rodale may deploy mobile marketing campaigns and may allow you to register for services that involve messages and/or e-mails being sent to your mobile device. You are responsible for obtaining access to the mobile device services, and that access may involve third-party fees, including mobile carrier, text messaging, or airtime charges. You are solely responsible for those fees, including any and all fees associated with the delivery of the messages, e-mails or other materials to your mobile device. Please consult your mobile service providers' pricing plan prior to registering for any such service to determine the charges for sending and receiving text messages from/to your mobile device. You will be given the opportunity to opt-out of receiving text messages or emails to your mobile device at the time you register and with each message or email you receive.

Mobile marketing campaigns may involve your sending an e-mail from your mobile device to Rodale or a third-party campaign operator. An e-mail or other response will then be sent to your mobile device. Opting to participate in a campaign is 100% your choice. When you engage in these mobile marketing campaigns, Rodale and the third-party campaign operator collect your cell phone number, the name of your wireless service provider, images that you send using your cell phone as part of the campaign, and other relevant information.

## What are "cookies" and what do they do for me?

In order to provide better service when you return to our site, Rodale may use cookies to store your preferences and information about such things as items added to your shopping cart, purchases you have made with us, what pages you visit, and past activity at a site. "Cookies" are tiny pieces of information stored by your browser on your computer's hard drive. Cookies are also used to ensure that you are not repeatedly sent the same banner ads and to customize Webpage content based on your browser type (Netscape or Microsoft Explorer, for example). Most browsers are initially set to accept cookies.

If you want to disable cookies, there is a simple procedure in most Internet browsers that allows you to turn off cookies. Please remember, however, that cookies may be required to allow you to use certain features of our sites.

We may also use third-party advertising, data analytics and online targeting companies to serve ads when you visit the Sites. When online advertisements are displayed to you, one or more persistent cookies may be placed on your computer. Some of these companies may use anonymous information (not including PII) about your visits to this Site and other websites in order to provide data and targeting recommendations based on which we may provide advertisements about goods and services of interest to you. To learn more about this practice and the third party companies we currently might the using, click here. To opt-out

Exhibit 2 - Page 4

of this practice please click here.

## Use of Web Beacons

Rodale Website pages may contain electronic images known as Web beacons - sometimes called single-pixel gifs - that may be used to assist in delivering cookies on our sites and allow us to count users who have visited those pages and to deliver co-branded services. We may include Web beacons in promotional e-mail messages or our newsletters in order to determine whether messages have been opened and acted upon.

Rodale may also employ Web beacons from third parties in order to help us compile aggregated statistics regarding the effectiveness of our promotional campaigns or other operations of our sites.

## Links

Rodale sites may, on occasion, contain links to other sites with information gathering practices different from our own. Visitors should consult privacy policies for all other sites, as Rodale has no control over information submitted to or collected by such third parties.

Rodale sites sometimes offer contest, sweepstakes, or promotions sponsored or co-sponsored by third parties. These third parties may obtain PII that visitors voluntarily submit to participate in the contest, sweepstakes, or promotion. Rodale has no control over the third-party sponsor's use of this information. The Rodale site will notify you at the time of requesting PII if third-party sponsors will be provided with such information.

## Changes...

Rodale may need to change this privacy policy from time to time in order to address new issues, evolving technologies, changes on our sites, or business practices. Rodale will post those changes so you will always know what information we gather and how we might use that information. Please refer back to this policy regularly.

## What about data security?

To ensure the security of your data - including address information and credit card numbers - Rodale always uses industry-standard encryption technologies when transferring and receiving consumer data exchanged with our site. We have appropriate security measures that protect against the loss, misuse, or alteration of information that we have collected from you.

## Rules for Submissions and Messages

Responsibility for what is posted in the discussion groups or other public forums lies with each user - you alone are responsible for the content of your messages and the consequences of any such messages. We cannot and do not review every submission a user may make. We neither endorse nor guarantee the accuracy or propriety of any submission. We do, however, reserve the right but do not assume the obligation to restrict or prohibit your use of our sites if we believe you are violating any of the terms of the agreement and to remove, edit, or relocate any submission as we see fit whether for legal or other reasons.

## Member Conduct

You understand that all information, data, text, software, music, sound, photographs, graphics, video, messages or other

Exhibit 2 - Page 5

materials ("Content"), whether publicly posted or privately transmitted, are the sole responsibility of the person from which such Content originated. This means that you, and not Rodale Inc., are entirely responsible for all Content that you upload, post, or otherwise transmit. Rodale does not control the Content posted and, as such, does not guarantee the accuracy, integrity, or quality of such Content. You understand that by using a Rodale site, you may be exposed to Content that is offensive, indecent or objectionable.

**You agree to not use the Rodale sites in order to:**

- upload, post, or otherwise transmit any Content that is unlawful, harmful, threatening, abusive, harassing, tortious, defamatory, vulgar, obscene, libelous, invasive of another's privacy, hateful, or racially, ethnically or otherwise objectionable;

- harm minors in any way;

- impersonate any person or entity, including, but not limited to, a Rodale official, forum leader, guide or host, or falsely state or otherwise misrepresent your affiliation with a person or entity;

- forge headers or otherwise manipulate identifiers in order to disguise the origin of any Content transmitted through the Service or develop restricted or password-only access pages, or hidden pages or images (those not linked to from another accessible page);

- upload, post, or otherwise transmit any Content that you do not have a right to transmit under any law or under contractual or fiduciary relationships (such as inside information, proprietary and confidential information learned or disclosed as part of employment relationships or under nondisclosure agreements);

- upload, post, or otherwise transmit any Content that infringes any patent, trademark, trade secret, copyright, or other proprietary rights of any party;

- upload, post, or otherwise transmit any unsolicited or unauthorized advertising, promotional materials, "junk mail," "spam," "chain letters," "pyramid schemes," or any other form of solicitation, except in those areas of the Service that are designated for such purpose;

- upload, post, or otherwise transmit any material that contains software viruses or any other computer code, files or programs designed to interrupt, destroy or limit the functionality of any computer software or hardware or telecommunications equipment;

- interfere with or disrupt the servers or networks connected to the Rodale site, or disobey any requirements, procedures, policies or regulations of networks connected to the site;

- intentionally or unintentionally violate any applicable local, state, national or international law, including, but not limited to, regulations promulgated by the U.S. Securities and Exchange Commission, any rules of any national or other securities exchange, including, without limitation, the New York Stock Exchange, the American Stock Exchange or the NASDAQ, and any regulations having the force of law;

- "stalk" or otherwise harass another;

- collect or store personal data about other users;

- promote or provide instructional information about illegal activities, promote physical harm or injury against any group or individual, or promote any act of cruelty to animals;

- use your home page (or directory) as storage for remote loading or as a door or signpost to another home page; or

- engage in commercial activities without the express written consent of Rodale Inc. This includes, but is not limited to, the following activities:

    o  offering for sale any products or services;

open in browser PRO version    Are you a developer? Try out the HTML to PDF API    New hot app:  Facebook Albums To PDF    pdfcrowd.com

Exhibit 2 - Page 6

open in browser PRO version   Are you a developer? Try out the HTML to PDF API

## Rights

You acknowledge that we acquire all Rights to use any posted materials as described above so that we do not violate any Rights you may have in materials you post. By submitting content to or through our sites, you grant us the non-exclusive right to reproduce, modify, and distribute it as we see fit in any medium and for any purpose in any form, media, or technology now known or later developed. You also permit any other user to access, display, and print such content for personal use. You vouch that any material you submit does not violate, plagiarize, or infringe upon the right of any third party, including copyright, trademark, or proprietary rights. If non-original content is included in your posting, you must obtain permission from the content owner and attribute it.

## Copyrights and Copyright Agent

Rodale respects the rights of all copyright holders. If you believe that your work has been copied and used on one of our Sites in a way that constitutes copyright infringement, please provide Rodale's Copyright Agent the following information required by Section 512 of the Digital Millennium Copyright Act:

- A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed;
- Identification of the copyright work claimed to have been infringed, or, if multiple copyrighted works at a single on-line site are covered by a single notification, a representative list of such works at that site;
- Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit us to locate the material;
- Information reasonably sufficient to permit us to contact the complaining party;
- A statement that the complaining party has a good-faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law; and
- A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

Rodale's Copyright Agent may be contacted at Copyright Agent, Rodale Inc., 400 South 10th Street, Emmaus PA 18098-0099.

## We appreciate the opportunity to serve you!

If you have any questions regarding this privacy policy statement or if you feel that this site has not followed its stated information policy, feel free to contact us. Our postal address is: 400 South 10th Street, Emmaus, PA 18098, and we can be reached via e-mail at http://www.rodale.com/customerservice.html. You can reach customer service by telephone at 866-387-0509.

Additionally, you may contact your state or local consumer protection office, The Direct Marketing Association's Committee on Ethical Business Practices, the Better Business Bureau, or The Federal Trade Commission by phone at (202) FTC-HELP

New hot app:   Facebook Albums To PDF   pdfcrowd.com

Exhibit 2 - Page 7

(202/382-4357) and online at www.ftc.gov.

Note: This privacy policy applies to all of Rodale's owned and operated websites and to Rodale's other information gathering activities.

Rodale complies with all the stringent standards of ethical conduct set forth by the Direct Marketing Association.

Printer-friendly version

Your Privacy Rights | Manage Email Preferences | Contact Us | Rodale Institute | Career Opportunities

open in browser PRO version    Are you a developer? Try out the HTML to PDF API

New hot app: Facebook Albums To PDF

pdfcrowd.com

Exhibit 2 - Page 8

# Exhibit 3

# EDELSON MCGUIRE, LLC FIRM RESUME

EDELSON MCGUIRE, LLC is a commercial litigation and legal consulting firm with attorneys in Illinois, Florida, New York, Colorado and California.  The firm has five primary practice groups:  plaintiffs' class action litigation (with a particular emphasis on technology cases), e-discovery and information technology, general commercial litigation, entertainment law, and legal and political consulting.

Our attorneys have been recognized as leaders in these fields by state and federal legislatures, national and international media groups, the courts, and our peers.  Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class action suits, including the recent Thomas the Tank Engine lead paint class actions, the AT&T mobile content class actions, the home equity credit reduction cases, and privacy class actions involving T-Mobile and Microsoft.  We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony, and other issues.  Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally.  Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools and are asked to serve as testifying experts in cases involving class action and consumer issues.

## PLAINTIFFS' CLASS AND MASS ACTION PRACTICE GROUP

EDELSON MCGUIRE is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on technology class actions, and has been called a "class action 'super firm'" by a national organization.  (Decalogue Society of Lawyers, Spring 2010.)  As has been recognized by federal courts, our firm has an "extensive histor[y] of experience in complex class action litigation, and [is a] well-respected law firm[] in the plaintiffs' class action bar."  *In re Pet Food Prod. Liab. Litig.*, MDL Dkt. No. 1850, No. 07-2867 (NLH) (D.N.J. Nov. 18, 2008). A leading arbitrator concurred:  "The proof of [the firm's] experience, reputation, and abilities is extraordinary. . . .  Each [of their cases] elaborates on the experience and unique success [they] have had in achieving leading roles in the area of 'technology consumer protection class actions.'"  (Arbitration award in mobile content class action settlement, August 6, 2009)  In appointing Edelson McGuire interim co-lead in one of the most high profile cases in the country, a federal court pointed to our ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries."  -In Re JPMorgan Chase Home Equity Line of Credit Litig., No. 10 C 3647 (N.D.Ill, July 16, 2010).

We have several sub-specialties within our plaintiffs' class and mass action practice group:

> ***Consumer Technology Class Actions***:  We have settled the only class actions to date alleging text message spam under the Telephone Consumer Protection Act, including a $10,000,000 settlement with Simon & Schuster and a $7,000,000 settlement with Timberland Co.  We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, and an injunctive settlement against Facebook, Inc., collectively worth over a hundred million dollars.

Exhibit 3 - Page 1

**Representative Settlements:**

- *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cook County, Illinois): Lead counsel in class action settlement involving 27 related cases alleging unauthorized mobile content charges.  Case settled for $36 million.

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton County Sup. Ct., GA):  Lead counsel class action settlement involving 16 related cases against largest wireless service provider in the nation.  "No cap" settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Lozano v. 20th Century Fox*, No. 09-cv-05344 (N.D.Ill):  Lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers.   Case settled for $16,000,000.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.):  Lead counsel in case alleging unauthorized charges were placed on cell phone bills.  Case settled for $12,000,000.

- *Parone v. m-Qube, Inc.* No. 08  CH 15834 (Cook County, Illinois):  Lead counsel in class action settlement involving over 2 dozen cases alleging the imposition of unauthorized mobile content charges.  Case settled for $12,254,000.

- *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.).  Co-lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $10,000,000.

- *Williams, et al. v. Motricity, Inc. et al.*, Case No. 09 CH 19089 (Cook County, Illinois):  Lead counsel in class action settlement involving 24 cases alleging the imposition of unauthorized mobile content charges.  Case settled for $9,000,000.

- *VanDyke v. Media Breakaway, LLC*, No. 08 CV 22131 (S.D. Fla.):  Lead counsel in class action settlement alleging unauthorized mobile content charges.  Case settled for $7,600,000.

- *Weinstein, et al. v. Airit2me, Inc.*, Case No. 06 C 0484 (N.D. Ill)  Co-lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $7,000,000.

- *Gresham v. Cellco Partnership*, No. BC 387729 (Los Angeles Sup. Ct.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills.  Settlement provided class members with full refunds.

- *In Re: ATI Technologies HDCP Litigation*, No. 06-cv-1303 JW (N.D. Cal.): Co-Lead Counsel in a class action alleging deceptive trade practices against a graphics card manufacturer resulting in an $11 million settlement.

- *Duffy v. Nevis Mobile, LLC,* No. 08 CH 21376 (Cir. Ct. Cook County, IL): Class counsel in certified class action against mobile content provider for unauthorized mobile content charges resulting in default judgment over $10,000,000.

- *Shen v. Distributive Networks LLC.* No. 06 C 4403 (N.D. Ill.): Co-lead counsel in a class action alleging that defendant violated federal law by sending unsolicited text messages to the cellular telephones of consumers nationwide. The settlement – the first of its kind in the country – provided each class member with up to $150 in cash.

- *Zurakov v. Register.com,* No. 01-600703 (New York County, NY): Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its deceptive practices in registering Internet domain names. Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17,000,000.

**Privacy/Data Loss Class Actions**: Edelson McGuire has been recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *In re Facebook Privacy Litig.*, No. C 10-02389 (N.D.Cal) (order appointing Edelson McGuire interim co-lead of privacy class action). We have litigated numerous class actions against Facebook, Sears, Storm 8, Google, T-Mobile, Microsoft and others involving the failure to protect customers' private information, some resulting from security breaches.

**Representative Cases:**

- *In re Facebook Privacy Litigation,* 10-cv-02389 (N.D. Cal.): Co-lead counsel in suit alleging that Facebook unlawfully shared its users' sensitive personally identifiable information with Facebook's advertising partners.

- *In re Zynga Privacy Litigation,* 10-cv-04680 (N.D. Cal.): Co-lead counsel in suit against gaming application designer for the alleged unlawful disclosure of its users' personally identifiable information to advertisers and other third parties.

- *Gaos v. Google,* 10-cv-04809 (N.D. Cal.): Part of a team of attorneys in suit alleging that Google unlawfully disclosed its users' search queries to website owners and other third parties.

- *In re Sidekick Litig. ,* No. C 09-04854-JW (N.D. Cal.): Co-lead counsel in

Exhibit 3 - Page 3

cloud computing data loss case against T-Mobile and Microsoft. Settlement provided the class with potential settlement benefits valued at over $12 million.

- *Abrams v. Facebook, Inc.*, No. 07-05378 (N.D. Cal.):  Lead counsel in injunctive settlement concerning the transmission of allegedly unauthorized mobile content.

- *Desantis v. Sears*, 08 CH 00448 (Cook Cty):  Lead counsel in injunctive settlement alleging national retailer allowed purchase information to be publicly available through the internet.

***Products Liability Class Actions***:  We have been appointed lead counsel in state and federal products liability class settlements, including a $30,000,000 settlement resolving the "Thomas the Tank Engine" lead paint recall cases and a $32,000,000 settlement involving the largest pet food recall in the history of the United States and Canada.

### Representative Settlements:

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cir. Ct. Cook County, IL):  Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains.  Settlement is valued at over $30,000,000 and provides class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Food Products Liability Litig.*, No. 07-2867 (D. N.J.):  Part of mediation team in class action involving largest pet food recall in United States history.  Settlement provided $24,000,000 common fund and $8,000,000 in charge backs.

***Banking Class Actions***:  Edelson McGuire has been at the forefront of class action litigation arising in the aftermath of the federal bailouts of the banks.  Its suits include claims that the certain banks unlawfully suspended home credit lines based on pre-textual reasons, and that certain banks have failed to honor loan modification programs.

### Representative Cases:

- *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, 10-cv-3647 (N.D. Ill.):  Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines.

- *Levin v. Citibank, N.A.*, C-09-0350 MMC (N.D. Cal.):  Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines.

- Testified or slated to testify at town halls and/or state hearings in Florida

Exhibit 3 - Page 4

and California on banks' suspensions of home credit lines.

- Settled numerous consumer class actions alleging fraud or other unconscionable behavior by banks and other lenders.

*General Consumer Protection Class Actions*:   We have successfully prosecuted countless class action suits against health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers.

**Representative Settlements:**

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cir. Ct. Cook County, IL):  Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies.  A global settlement provided the class with over $40,000,000 in benefits, including cash payments, debt relief, and free health club services.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cir. Ct. Cook County, IL):  Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between $11,000,000 and $14,000,000 in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill):  Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts.  The case settled in 2007, providing the class with full debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill):  Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts.  The case settled in 2007, providing the class with approximately $2,000,000 in debt relief.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cir. Ct. Cook County, IL):  Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes.  The settlement provided the class with a collective award with a face value in excess of $3,000,000.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cir. Ct. Cook County, IL):  Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes.  The settlement provided the class with a collective award with a face value between $1,600,000 and $4,800,000.

*Insurance Class Actions*:   We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin

Exhibit 3 - Page 5

insurance company for terminating the health insurance policies of groups of self-insureds.

**Representative Settlements:**

- *Holloway v. J.C. Penney*, No. 97 C 4555, (N.D. Ill.):  One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class.  The case settled in or around December of 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI):  Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds.  The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

***Mass/Class Tort Cases***:  Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions.

**Representative Cases:**

- *Aaron v. Chicago Housing Authority*, 99 L 11738, (Cir. Ct. Cook County, IL):  Part of team representing a group of public housing residents bringing suit over contamination-related injuries.  Case settled on a mass basis for over $10,000,000.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.):  Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media.  Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International.  Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States.   We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from

Exhibit 3 - Page 6

partnership and business-to-business disputes, to litigation involving corporate takeovers.  We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars.  Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations.  All of our attorneys have regularly practiced in state and federal trial and appellate courts.

## E-DISCOVERY AND INFORMATION TECHNOLOGY

Led by nationally-recognized eDiscovery expert Steven Teppler, our firm has taken the lead on eDiscovery issues including data protection, information technology, document management and retrieval, loss or destruction of information, and authentication and admissibility issues uniquely inherent to computer generated information. This includes spoliation allegations arising from acts of unauthorized or illegal data manipulation or alteration.

## ENTERTAINMENT LAW

Led by legendary attorney Barry Reiss, EDELSON MCGUIRE represents producers, actors, writers, financiers in negotiations, creative matters, and related transactional and litigation matters.

## LEGAL AND POLITICAL CONSULTING

Legal and political consulting is an area of practice that sets EDELSON MCGUIRE apart from other law firms.  The firm advises on governmental and consumer issues and has helped its clients formulate business and legislative strategies, revise contractual and advertising material, and implement consumer protection strategies more generally.  Our clients range from small Internet start-ups, to bricks and mortar companies, to one of the most trafficked Internet marketers, content and commerce firms in the country.

## OUR ATTORNEYS

**JAY EDELSON** is the founder and Managing Partner of Edelson McGuire. He has been recognized as a leader in class actions, technology law, corporate compliance issues and consumer advocacy by his peers, the media, state and federal legislators, academia and courts throughout the country.

Jay has been appointed lead counsel in numerous state, federal, and international class actions, resulting in hundreds of millions of dollars for his clients. He is regularly asked to weigh in on federal and state legislation involving his cases. He testified to the U.S. Senate about the largest pet food recall in the country's history and is advising state and federal politicians on consumer issues relating to the recent federal bailouts, as well as technology issues, such as those involving mobile marketing. Jay also counsels companies on legal compliance and legislative issues in addition to handling all types of complex commercial litigation.

Jay has litigated class actions that have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to Internet businesses, and the interpretation of numerous other state and federal statutes. As lead counsel, he has also

secured settlement in cases of first impression involving Facebook, Microsoft, AT&T and countless others, collectively worth hundreds of millions of dollars.

In addition to technology based litigation, Jay has been involved in a number of high-profile "mass tort" class actions and product recall cases, including cases against Menu Foods for selling contaminated pet food, a $30 million class action settlement involving the Thomas the Tank toy train recall, and suits involving damages arising from second-hand smoke.

Adding to the diversity of his practice, Edelson also advises major labor unions and Hollywood financiers and serves as a consultant on several film, television, and radio deals.

In 2009, Jay was named one of the top 40 Illinois attorneys under 40 by the Chicago Daily Law Bulletin. In giving Jay that award, he was heralded for his history of bringing and winning landmark cases and for his "reputation for integrity" in the "rough and tumble class action arena." In the same award, he was called "one of the best in the country" when it "comes to legal strategy and execution." Also in 2009, Jay was included in the American Bar Association's "24 hours of Legal Rebels" program, where he was dubbed one of "the most creative minds in the legal profession" for his views of associate training and firm management. In 2010, he was presented with the Annual Humanitarian Award in recognition of his "personal integrity, professional achievements, and charitable contributions" by the Hope Presbyterian Church.

Jay is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting, including serving as panelist on national symposium on tort reform and, separately, serving as a panelist on litigating high-profile cases. He has also appeared on dozens of television and radio programs to discuss his cases. He has taught classes on class action law at Northwestern Law School and The John Marshall Law School, and has co-chaired a 2-day national symposium on class action issues. He is slated to teach a seminar on class action litigation at Chicago-Kent College of Law in the Fall of 2010.

Jay is a graduate of Brandeis University and the University of Michigan Law School.

**MYLES MCGUIRE** is a Partner at EDELSON MCGUIRE. His practice concentrates on consumer protection law, class actions, and legal and political consulting to technology companies. Prior to entering private practice, Myles spent several years operating an Internet advertising company, which was later sold, in addition to counseling high-tech companies on legal issues.

Since turning to plaintiffs' advocacy, Myles has had principle control over many nationwide and multi-state class actions. Drawing on his technological background, his specific area of emphasis is on emerging technology class actions, including those involving electronic commerce, cellular telephony and wireless media, among others. He has served in leadership positions in groundbreaking settlements involving Facebook, Verizon, Sprint, and T-Mobile.

Due to his diverse legal and business expertise, Myles has been asked by members of Congress to comment on proposed legislation in the mobile content industry and has worked with state regulatory bodies in related efforts.

Myles graduated from Marquette University Law School in 2000 and is admitted to practice in Wisconsin and Illinois. He is a member of the National Association of Consumer Advocates and

the Chicago Bar Association.

**RYAN D. ANDREWS** is a Partner and Group Chair at EDELSON MCGUIRE. He has been appointed class counsel in multiple complex high-stakes class actions, and actively involved in the litigation and settlement of class actions focused on the mobile content industry and Internet privacy.

Prior to joining the firm, Ryan engaged in all aspects of the prosecution and defense of claims on behalf of individual and corporate clients, including motion practice, arbitration, mediation, trial to verdict, and appeals.

Ryan received his J.D. with High Honors from the Chicago-Kent College of Law in 2005 and was named *Order of the Coif*. While in law school, Ryan was a Notes & Comments Editor for THE CHICAGO-KENT LAW REVIEW, as well as a teaching assistant for both Property Law and Legal Writing courses. Ryan externed for the Honorable Joan B. Gottschall in the Northern District of Illinois, and earned CALI awards for the highest grade in five classes.

Ryan graduated from the University of Michigan in 2002, earning his B.A., *with distinction*, in Political Science and Communications.

**RAFEY S. BALABANIAN** is a Partner and Group Chair at EDELSON MCGUIRE. Rafey focuses his practice on prosecuting consumer technology class actions, banking class actions, and general consumer class actions. He is also co-chair of Edelson McGuire's business litigation group.

On the plaintiff's side, Rafey has been the court appointed lead counsel in numerous high-stakes class action litigation and has obtained settlements in excess of $50 million.

On the business litigation side, Rafey has represented individual and corporate clients in a wide variety of complex cases, including commercial disputes seeking damages of $60 million and several "bet the company" cases.

Rafey has first-chaired both jury and bench trials, engaged in extensive motion practice, and acted as lead counsel in several mediations and arbitrations.

Rafey received his J.D. from the DePaul University College of Law in 2005. While in law school, Rafey received a certificate in international and comparative law and earned the CALI award for the highest grade in advanced trial advocacy. Rafey received his B.A. in History, *with distinction*, from the University of Colorado – Boulder in 2002.

**MICHAEL J. MCMORROW** is a Partner at EDELSON MCGUIRE. His practice focuses on commercial litigation and class action law, and his recent experience includes representation of consumer classes in litigation under the federal Telephone Consumer Protection Act, the California Unfair Competition Law, several common law claims, and additionally, representation of corporate clients in the mobile telephone content industry in commercial and trade secret litigation.

Mike is an experienced trial and appellate commercial litigator who has represented clients in court and at trial across a full spectrum of issues, including trade secret litigation, commercial

Exhibit 3 - Page 9

contracts, airplane leasing, airport construction, automotive manufacturing, commercial and consumer lending, product liability, and has represented clients in heavily-regulated industries including insurance, defense contracting, health care and energy. Prior to joining the firm, Mike was Senior Counsel at Foley & Lardner LLP, practicing commercial and energy regulatory litigation.

Mike graduated magna cum laude from the University of Illinois College of Law in 2000, where he was Associate Editor of the UNIVERSITY OF ILLINOIS LAW REVIEW, a Harno Scholarship recipient, and President of the Prisoners' Rights Research Project. Mike received his B.A. in Political Science from Yale University in 1994. Mike has been a member of the Trial Bar for the Northern District of Illinois since 2005 and the Chicago Bar Association Judicial Evaluation Committee since 2003.  His pro bono representations have included asylum applicants and prisoners' rights issues.

**STEVEN W. TEPPLER** is a Partner of EDELSON MCGUIRE.  Steven concentrates his practice on data protection and information technology law, including electronic discovery, loss or destruction of information, authentication and admissibility issues uniquely inherent to computer generated information, including spoliation issues arising from unauthorized or illegal data manipulation or alteration. He is the Co-Vice-Chair of the American Bar Association Information Security Committee as well as the Florida Bar's Professional Ethics Committee.

Steven has authored over a dozen articles relating to information technology law and routinely presents his work at conferences.  Steven's recent publications include: *Spoliation in the Digital Universe, The SciTech Lawyer,* Science and Technology Law Section of the American Bar Association, Fall 2007; *Life After Sarbanes-Oxley – The Merger of Information Security and Accountability* (co-author), 45 JURIMETRICS J. 379 (2005); *Digital Signatures Are Not Enough* (co-author), Information Systems Security Association, January 2006; *State of Connecticut v. Swinton:  A Discussion of the Basics of Digital Evidence Admissibility* (co-author), Georgia Bar Newsletter Technology Law Section, Spring 2005; *The Digital Signature Paradox* (co-author), IETF Information Workshop (The West Point Workshop) June 2005; *Observations on Electronic Service of Process in the South Carolina Court System,* e-filing Report, June 2005.  Steven is also a contributing author to an American Bar Association book with the working title "Foundations of Digital Evidence" (publication expected March 2009).

Steven graduated from the Benjamin N. Cordozo School of Law in 1980 after earning his B.A., *summa cum laude,* from the City College of New York in 1977.  Steven is admitted to the bars of New York, the District of Columbia and Florida.

**STEVEN LEZELL WOODROW** is a Partner and Group Chair at EDELSON MCGUIRE and the firm's hiring attorney. Steven has successfully litigated and settled a number of consumer protection cases through trial, engaged in extensive motion practice, drafted appellate briefs, prosecuted class actions and participated in multi-session mediations.

Prior to joining the firm, Steven was a litigator at a Chicago boutique focusing on consumer protection matters, real estate disputes, fraudulent transfers in bankruptcy and the prosecution of white-knight mortgage fraud cases.

Steven received his J.D. from Chicago-Kent College of Law with High Honors, *Order of Coif*, while earning his certificate in litigation and alternative dispute resolution. During law school, he served as a Judicial Extern for the Honorable Ann C. Williams on the Seventh Circuit Court of Appeals and as President of the Student Bar Association. Steven also served as a Notes and Comments Editor for THE CHICAGO-KENT LAW REVIEW and represented Chicago-Kent at the National Sports Law Moot Court Competition in New Orleans in 2004.  Steven was awarded the ABA-ALI Scholarship and Leadership Award for best representing the combination of leadership and scholarship in his graduating class and also received the Lowell H. Jacobson Memorial Scholarship, which is awarded competitively to a student from one of the law schools in the Seventh Circuit to recognize personal commitment and achievement.

Steven received his B.A. in Political Science, *with Distinction*, from the University of Michigan—Ann Arbor in 2002.

**BARRY REISS** is Of Counsel to EDELSON MCGUIRE.  After a short stint as a labor attorney, representing the Teamsters, Barry entered the music business as a junior partner in the firm representing such artists as Herman's Hermits, Led Zeppelin and Jimi Hendrix.

After five years Barry was lured out of private practice by the legendary Clive Davis to join him at CBS Records where he became Vice President of Talent Contracts.  When Clive left CBS he asked Barry to join him to help form Arista Records where he served as Administrative Vice President from its inception for its first five years.  When MCA Records decided to start an east coast record label ("Infinity Records") Barry moved from Arista to MCA as Executive Vice President of Infinity Records.  When Infinity was merged into MCA Records, MCA asked him to stay on to help form its "ancillary" entertainment divisions.  In that capacity Barry served as Vice President for Legal and Business Affairs from their inception of MCA Home Video, Universal Pay Television and MCA Video Disc.  He also served as Vice President of Merchandising Corporation of America (the studio's merchandising arm) and of MCA's Trademark and Copyright division as well as continuing to service MCA Records' east coast operations.  In 1986, Barry was additionally appointed East Coast General Counsel for MCA, Inc. responsible for all east coast legal matters for MCA Inc. including its corporate matters, feature film & television, book publishing, toy and Spencer Gifts divisions. In that capacity Barry helped guide MCA's acquisition of Grosset and Dunlap, Playboy Books and LJN Toys. In 1989, Barry left MCA to re-enter private practice representing such clients as U2, Valient Comics, The Allman Brothers Band and Universal Television.

In January of 1995, Barry returned to the corporate world as Senior Vice President of Business and Consumer Affairs for The ColumbiaHouse Company responsible for Business, Consumer and Government Affairs which included negotiating the Company's major licensing agreements, as well as representing the company's interests in federal and state legislative matters, postal issues consumer relations activities and the Company's launching of its two internet sites.  In March of 2000 Barry left ColumbiaHouse to return to the private practice of law. Barry has served as a member of the Motion Picture Association of America (MPAA) and Record Industry Association of America (RIAA) Labor Negotiation and Anti-Piracy Committees, the RIAA Copyright Law Revision Committee, as a member of the Board of Directors of the Association for Postal Commerce and on the Government Affairs and Privacy Committees of the Direct Marketing Association. He is currently an Executive Committee member of the Music For Youth

Foundation, serves as a mentor for Volunteer Lawyers for the Arts and was recently featured on Sky Radio's "Americas Best Lawyers".

Barry is a graduate of Columbia College and received a Bachelor of Law Degree, *cum laude*, from Columbia Law School.

**SEAN P. REIS** is Of Counsel to EDELSON MCGUIRE . Sean is an experience trial attorney and business litigator.  Sean has experience in a wide-range of litigation matters, including those involving trade secrets, real estate fraud, employment, and consumer issues.  Sean has tried sixteen cases, including several multi-week jury trials.

Prior to joining Edelson McGuire, Sean was trained at an international law firm and later founded his own practice.  In 1993, Sean graduated from University of California at San Diego with a degree in quantative economics.  Following that Sean graduated from Rutgers University School of Law, Newark  where he was the business editor of the Rutgers Law Review and where he received the graduation for appellate advocacy.

**EVAN M. MEYERS** is Senior Counsel at EDELSON MCGUIRE. Evan is an experienced trial and appellate litigator and has handled a broad range of complex litigation matters, including contract disputes, securities and consumer fraud, employment discrimination, insurance coverage, antitrust, shareholder and tax disputes, business torts and other matters. Evan has managed all aspects of the litigation process, including evaluation and strategic analysis, drafting pleadings in state and federal trial and appellate courts, taking and defending depositions, arguing motions, and representing clients in mediations and settlement conferences. He has also successfully tried cases in state court.

Prior to joining Edelson McGuire, Evan worked at Drinker Biddle & Reath LLP, where he was an associate in the firm's commercial litigation practice group and represented a wide range of clients in federal and state courts, including manufacturers, insurance and financial services companies, government agencies, close corporations, hospitals, colleges and universities and not-for-profit entities.

Evan received his J.D., cum laude, from the University of Illinois College of Law in 2002, where he was an associate editor of the Elder Law Journal. Additionally, he served as a judicial extern with the Hon. Wayne R. Andersen of the U.S. District Court for the Northern District of Illinois. Evan received his bachelor's degree, with distinction, in political science from the University of Michigan in 1999.

**MICHAEL J. ASCHENBRENER** is Of Counsel to EDELSON MCGUIRE. Michael focuses his practice on high technology class actions, including Internet privacy rights and digital media and content rights, as well as intellectual property.

Before entering the legal field, Michael spent several years working in the cell phone, computer, and Internet marketing industries where he gained significant insight into the business of emerging technology.

Prior to joining EDELSON MCGUIRE, Michael served as an Assistant Attorney General for the State of Minnesota and as an associate at a large plaintiffs' consumer protection law firm.

Michael has served as Lead or Co-Lead Counsel in numerous class actions, which have resulted in settlements worth tens of millions of dollars. Michael has also served as lead attorney in other ground-breaking class actions, such as *Gawronski v. Amazon*, which alleged that Amazon remotely deleted copies of electronic books, *Eros v. Linden Research*, which seeks to enforce intellectual property rights for virtual goods, and *Earll v. eBay*, which seeks to establish rights for deaf users of the Internet under the Americans with Disabilities Act.

Michael has appeared in dozens of publications and numerous TV and radio programs, and frequently serves as a guest speaker at technology and class action conferences.

Michael graduated from Chicago-Kent College of Law, where he was an award-winning member of the Moot Court Honor Society, as well as Editor of the SEVENTH CIRCUIT REVIEW. Michael received his B.A. in Journalism from the University of Minnesota-Twin Cities.

**WILLIAM C. GRAY** is a Group Chair at EDELSON MCGUIRE. Bill has handled a broad range of complex litigation matters including; criminal matters, consumer and international fraud cases, labor and employment issues, and class actions. He has drafted pleadings and briefs, argued motions, and represented clients in mediations, arbitrations, state and federal courts, before human rights agencies, and before state and federal Department of Labor. Additionally, Bill has significant appellate advocacy experience and has argued in front of the Seventh Circuit Court of Appeals.

Bill previously worked at Sidley Austin LLP, and represented a wide range of clients, including Fortune 100 companies, in various forums, including manufacturers, insurance and financial services companies, government agencies, corporations, universities and not-for-profit entities. Additionally, he has participated in several high-profile cases resulting in favorable resolutions for his clients.

Bill received his J.D., cum laude, from Harvard Law School, where he was an editor of the Black Letter Law Journal. He also served as a research assistant for Professor Alan Dershowitz. Bill additionally spent a semester working in Jerusalem for the Simon Wiesenthal Center and was a member of the Criminal Code Commentary Committee for the country of Kosovo. Bill graduated from Indiana University with high honors. While at Indiana University, Bill was elected President of the Student Body for the campus's 40,000 students and was inducted into Phi Beta Kappa. He also appeared as an invited guest on MSNBC, The Mitch Albom Show, and The O'Reilly Factor.

Bill has been an active member of the legal community and has served in many pro bono matters. He currently serves on the Illinois State Bar Association Standing Committee on the Attorney Registration and Disciplinary Committee (ARDC), is a Board Member of the Decalogue Society of Lawyers (co-chair of the Young Lawyer's Committee), and is actively involved in the Anti-Defamation League and the American Cancer Society. Additionally, Bill has collaborated for years with the Northwestern Center on Wrongful Convictions in securing the release of wrongfully-convicted inmates.

**BRAD BAGLIEN** is an Associate at EDELSON MCGUIRE. Brad focuses his practice on privacy and technology class actions.

Brad previously worked for Sidley Austin LLP, where he represented a wide range of clients, including Fortune 100 companies, small businesses, and individuals. He has handled a variety of complex commercial litigation matters in state and federal courts, including consumer fraud actions, contract disputes, internal investigations, insurance class actions, and commercial tax litigation.

Brad graduated with honors from the University of Chicago Law School, where he participated in the Hinton Moot Court Competition and was an instructor in the Street Law program at several local high schools. During law school, Brad served as a judicial extern for the Honorable Mark Filip in the Northern District of Illinois.

Brad graduated from St. Olaf College with degrees in Economics and Political Science. While at St. Olaf, he was a captain of the baseball team and a member of the football team.

**CHRISTOPHER L. DORE** is an Associate at EDELSON MCGUIRE. Chris focuses his practice on prosecuting consumer technology fraud, text-spam, and credit reduction class actions.

Chris graduated magna cum laude from The John Marshall Law School, where he served as the Executive Lead Articles for the Law Review, as well as a team member for the D.M. Harish International Moot Court Competition in Mumbai, India. His article, What to Do With Omar Khadr? Putting a Child Soldier on Trial: Questions of International Law, Juvenile Justice, and Moral Culpability appeared in the John Marshall Law Review. Throughout law school, Chris worked as a Legal Writing TA. He received a CALI Award for obtaining the highest grade in Voting and Election Law.

Before entering law school, Chris received his Masters degree in Legal Sociology, graduating magna cum laude from the International Institute for the Sociology of Law, located in Onati, Spain. Chris received his B.A. in Legal Sociology from the University of California, Santa Barbara.

**BENJAMIN H. RICHMAN** is an Associate at EDELSON MCGUIRE. Ben focuses his practice in the prosecution of consumer technology and other class actions, as well as general commercial litigation.

Ben received his J.D. from The John Marshall Law School, earning a Certificate in Trial Advocacy. During law school Ben served as Executive Student Publications Editor for The John Marshall Law Review and as a judicial extern for the Honorable John W. Darrah of the United States District Court for the Northern District of Illinois. Ben also acted as a teaching assistant in several torts courses and earned the CALI award for the highest course grade in Contracts II. Ben has since returned to the classroom as a guest-lecturer on issues related to class actions and complex litigation.

Ben graduated from Colorado State University, earning his B.S. in Psychology.

**ARI J. SCHARG** is an associate at Edelson McGuire LLC.  He handles all aspects of litigation

from pre-filing investigation through trial.  In addition to class action litigation, Ari has substantial experience litigating commercial, real estate, employment, and constitutional matters. He also counsels entrepreneurs and works closely with startup companies to manage risk and raise capital.

Prior to joining the firm, Ari worked as a litigation associate at a large Chicago firm, where he represented a wide range of clients including Fortune 500 companies and local municipalities. His work included representing the Cook County Sheriff's Office in several civil rights cases and he was part of the litigation team that forced Craigslist to remove its "Adult Services" section from its website.  He also regularly tries his cases before judges and juries, including a trial that spanned six months.

Ari is very active in community groups and legal industry associations.  He is a member of the Board of Directors of the Chicago Legal Clinic, an organization that provides legal services to low-income families in the Chicago area.  Ari acts as Outreach Chair of the Young Adult Division of American Committee for the Shaare Zedek Medical Center in Jerusalem, and is actively involved with the Anti-Defamation League.  He is also a member of the Standard Club Associates Committee.

Ari received his B.A. in Sociology from the University of Michigan – Ann Arbor and graduated magna cum laude from The John Marshall Law School where he served as a Staff Editor for Law Review and competed nationally in trial competitions.  During law school, he also served as a judicial extern to The Honorable Judge Bruce W. Black of the U.S. Bankruptcy Court for the Northern District of Illinois.

**IRINA SLAVINA** is an Associate at EDELSON MCGUIRE. As a Russian attorney, Irina obtained her LL.M degree in International and Comparative Law, with High Honors, from Chicago-Kent College of Law in 2003. Since that time Irina has had a unique legal career in the United States that started in a boutique law office in Chicago and progressed to the legal department of a major gaming and entertainment company on the east coast.

While working in-house with General Counsel, Irina gained extensive experience in drafting and negotiating company contracts and addressing the day-to-day legal inquiries of management. Irina handled patrons' liability claims, worked with state and local government officials in obtaining and renewing company licenses, and assisted with all aspects of corporate governance and compliance.

Irina earned her J.D. from Chicago-Kent College of Law with High Honors, Order of Coif, in 2009. While in law school, Irina represented Chicago-Kent in the McGee National Civil Rights Moot Court Competition. Irina was also a member of the Chicago-Kent Law Review, and her student note on the issue of a casino liability to problem gambles was published in the March 2010 issue, 85 Chi.-Kent L. Rev. 369. Irina externed for the Honorable Susan E. Cox in the Northern District of Illinois, and earned the CALI award for obtaining the highest grade in Constitutional Law, Evidence, and Legal Writing III courses.