1  MANATT, PHELPS & PHILLIPS, LLP
   BRAD W. SEILING (Bar No. CA 143515)
2    E-mail:  bseiling@manatt.com
   JUSTIN C. JOHNSON (Bar No. CA 252175)
3    E-mail: jjohnson@manatt.com
   11355 West Olympic Boulevard
4  Los Angeles, CA  90064-1614
   Telephone:  (310) 312-4000
5  Facsimile:  (310) 312-4224

6  Attorneys for Defendant
   RODALE INC.

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                      WESTERN DIVISION

11  CHARLOTTE BAXTER,                | Case No.  CV120585-GAF(AGRx)
    individually and on behalf of all |
12  other similarly situated,         | CLASS ACTION
                                      |
13             Plaintiff,             | NOTICE OF MOTION AND MOTION
                                      | TO DISMISS PLAINTIFF'S
14        vs.                         | COMPLAINT PURSUANT TO FED. R.
                                      | CIV. P. 12(b)(6) & 12(b)(1)
15  RODALE INC., a Pennsylvania       |
    corporation,                      |
16                                    | Ctrm:    Roybal 740
               Defendant.            | Judge:   Hon. Gary A. Feess
17                                    |
                                      |
18                                    | Hearing Date: March 26, 2012
                                      | Hearing Time: 9:30 a.m.
19                                    |
                                      |
20                                    | Complaint filed: January 23, 2012
                                      | Trial Date:  None set
21

22

23

24

25

26

27

28

MANATT, PHELPS &
  PHILLIPS, LLP
 ATTORNEYS AT LAW
   LOS ANGELES

**TO PLAINTIFF CHARLOTTE BAXTER AND HER ATTORNEYS OF RECORD: PLEASE TAKE NOTICE** that, on March 26, 2012 at 9:30 a.m. in Courtroom 740 of the above-titled Court, located at 255 East Temple Street, Los Angeles, California 90012, or as soon thereafter as the matter may be heard, Defendant Rodale Inc. ("Defendant" or "Rodale") will move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), to dismiss the Complaint for failure to state a claim upon which relief may be granted and for lack of standing.

This Motion is made on the following grounds:

- Plaintiff's First Cause of Action should be dismissed because Defendant complied with Cal. Civ. Code § 1798.83;
- Plaintiff's Second Cause of Action should be dismissed because it is entirely derivative of her failed First Cause of Action; and
- In the alternative, Plaintiff's First and Second Causes of Action should be dismissed because Plaintiff has alleged no facts to establish standing under Article III or the applicable statutes.

This motion is made following conferences of counsel pursuant to L.R. 7-3, which took place on February 2 and 14, 2012.

This  Motion is based upon this Notice, the Memorandum of Points and Authorities attached hereto, the Request for Judicial Notice filed concurrently herewith, and upon all pleadings, papers, and documents on file herein, together with those matters of which this Court may take judicial notice, and any oral argument which may be presented at the time of hearing.

1    Dated:  February 27, 2012          MANATT, PHELPS & PHILLIPS, LLP
                                        BRAD W. SEILING
2                                       JUSTIN C. JOHNSON

3

4                                       By:  _____/s/ Brad W. Seiling_____
                                             Brad W. Seiling
5                                            *Attorneys for Defendant*
                                             RODALE INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

                                        3        NOTICE OF MOTION AND MOTION TO DISMISS
                                                 PLAINTIFF'S COMPLAINT PURSUANT TO FED. R.
                                                 CIV. P. 12(B)(6) AND 12(B)(1)

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................... 1

II.  THE COMPLAINT .................................................................................... 2

    A.  Plaintiff's Allegations ........................................................................ 2

    B.  Rodale's Privacy Policy ..................................................................... 3

III.  MOTION TO DISMISS STANDARD .................................................... 4

IV.  PLAINTIFF'S FIRST CAUSE OF ACTION FAILS BECAUSE DEFENDANT COMPLIED WITH THE ACT ........................................ 5

    A.  The Act Provides for Two Alternative Means of Compliance ............ 5

        1.  The Act's Plain Language Confirms That Plaintiff's Can Comply With The Act In One Of Two Ways............................ 5

            a.  The First Way To Comply With the Act........................ 5

            b.  The Second Way To Comply With The Act ................... 5

        2.  The Act's Legislative History Confirms That A Business Can Comply With The Act In One Of Two Ways .................. 7

    B.  Rodale Complied With The Act By Notifying Customers Of A Cost-Free Means To Prevent the Disclosure Of Their "PII." ............ 10

V.  PLAINTIFF'S SECOND CAUSE OF ACTION FAILS WITH HER FIRST CAUSE OF ACTION ................................................................. 11

VI.  IN THE ALTERNATIVE, PLAINTIFF'S FIRST AND SECOND CAUSES OF ACTION SHOULD BE DISMISSED BECAUSE SHE HAS ALLEGED NO FACTS TO ESTABLISH ARTICLE III OR STATUTORY STANDING ....................................................................... 11

    A.  Plaintiff Alleges No Facts to Establish Article III Standing............... 11

    B.  In Any Event, Plaintiff Alleges No Facts To Establish Statutory Standing Under Under The UCL Or The Act ................................... 14

        1.  Plaintiff Lacks Standing Under The UCL ............................... 14

        2.  Plaintiff Lacks Standing Under The Act ................................. 14

VII.  CONCLUSION ....................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Allen v. Wright,*
  468 U.S. 737 (1984) ................................................................ 12

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................. 4, 5

*Baker v. Carr,*
  369 U.S. 186 (1962) ................................................................ 13

*Baldwin v. Sebelius,*
  654 F.3d 877 (9th Cir. 2011) ................................................. 13

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................. 4, 5

*Californians for Disability Rights v. Mervyn's, L.L.C.,*
  39 Cal.4th 223 (2006) ............................................................ 15

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
  20 Cal. 4th 163 (1999) ........................................................... 11

*Cetacean v. Community. v. Bush,*
  386 F.3d 1169 (9th Cir. 2004) ......................................... 14, 15

*Chandler v. State Farm Mut. Auto Ins. Co.,*
  596 F.Supp.2d 1314 (C.D. Cal. 2008) ................................... 13

*Charlson v. Wachovia Mortg. Corp.,*
  2009 U.S. Dist. LEXIS 99307 (C.D. Cal. 2009) .................... 12

*City of Los Angeles v. Lyons,*
  461 U.S. 95 ............................................................................ 13

*Daimler Chrysler Corp. v. Cuno,*
  547 U.S. 332 (2006) ............................................................... 12

*Davis v. Fed. Elec. Comn'n,*
  554 U.S. 724 (2008) ............................................................... 12

*Kwikset Corporation v. Superior Court,*
  51 Cal.4th 310 (2011) ............................................................ 15

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ................................................... 12, 13, 14

*Massachusetts v. Mellon,*
  262 U.S. 447 (1923) ............................................................... 13

*O'Shea v. Littleton,*
  414 U.S. 488 (1974) ............................................................... 13

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Olszewski v. Scripps Health*,
  30 Cal. 4th 798 (2003) .................................................................................... 11

*Raines v. Byrd*,
  521 U.S. 811 (1997) ........................................................................................ 14

*Robertson v. Dean Witter Reynolds, Inc.*,
  749 F.2d 530 (9th Cir. 1984) ............................................................................ 4

*Sacks v. Office of Foreign Assets Control*,
  466 F.3d 764 (9th Cir. 2006) .......................................................................... 13

*SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*,
  88 F.3d 780 (9th Cir. 1996) .............................................................................. 4

*United States v. Ritchie.*,
  342 F.3d 903 (9th Cir. 2003) ............................................................................ 5

*United States v. SCRAP*,
  412 U.S. 669 (1973) ........................................................................................ 14

*Vaugn v. Bay Envtl. Mgmt., Inc.*,
  567 F.3d 1021 (9th Cir. 2009) ........................................................................ 15

*Wishtoyo Found. v. Hattoy*,
  2007 U.S. Dist. LEXIS 42951 (C.D. Cal. 2007) ............................................. 4

## STATUTES

Cal. Civ. Code § 1798.83 ............................................................................. passim

Cal. Civ. Code § 1798.83(a) ..................................................................... 5, 6, 16

Cal. Civ. Code § 1798.83(b) ................................................................................ 6

Cal. Civ. Code § 1798.83(b)(1) ....................................................................... 6, 7

Cal. Civ. Code § 1798.83 (b)(1)(C) ................................................................... 16

Cal. Civ. Code § 1798.83(c)(2) ............................................................... 7, 10, 11

Cal. Civ. Code § 1798.84 ................................................................................... 15

Cal. Civ. Code § 1798.84(b) ........................................................................ 15, 16

Cal. Civ. Code § 1798.84(c) ........................................................................ 15, 16

California Business & Professions Code § 17200 ................................................ 3

California Business & Professions Code § 17204 .............................................. 15

## RULES

Fed. R. Civ. P. 12(b)(6) ................................................................................. 4, 15

301387885.7

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

## I.   __INTRODUCTION__

Defendant Rodale Inc. ("Rodale") complied with the "Shine the Light" Act, Cal. Civ. Code § 1798.83 (the "Act"), by notifying consumers of a cost-free method to prevent the disclosure of their personal information for direct marketing purposes.  The California Legislature specifically adopted this voluntary opt-out mechanism as one of two alternative means to comply with the Act.  Because Rodale did not violate the Act, the Court should dismiss this case with prejudice.

Plaintiff Charlotte Baxter ("Plaintiff") alleges that she disclosed personal information to Rodale when subscribing to *Runner's World* magazine, which Rodale publishes.  She seeks to hold Rodale liable under the Act, which governs consumers' ability to control and access personal information that is shared for direct marketing purposes.  According to the complaint, Rodale allegedly violated subsections (a) and (b) of the Act by failing to provide consumers with the information that it discloses for direct marketing purposes upon request, and failing to notify consumers of the means to obtain that information (although she does not allege that she ever actually made such a request).

There is a gaping hole in Plaintiff's theory of liability.  She completely ignores subsection (c), the alternative way to comply with the Act.  A business can comply with subsections (a) and (b), by advising consumers of the personal information it shares for direct marketing purposes and designating a place where consumers can send requests for the information; *or* it can comply with subsection (c), by notifying consumers of a cost-free method to prevent the disclosure of their information altogether.  The Act's legislative history confirms that businesses have a choice.  If a business chooses to provide a cost-free means for customers to opt-out of sharing personal information, the business complies with the Act, and compliance with subsections (a) and (b) is not necessary.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

1    Plaintiff's complaint cites virtually every subsection of the Act, except

2    subsection (c).  The complaint and attached exhibits confirm that Rodale complied

3    with subsection (c) by notifying consumers in its Privacy Policy of three cost-free

4    means to prevent the disclosure of their personal information –calling a toll-free

5    number, sending a written request through the mail, or through at link on Rodale's

6    website.  Though not required, Rodale's Privacy Policy also detailed the

7    information it collects and discloses, so consumers can meaningfully exercise their

8    opt-out right.  These facts are fatal to Plaintiff's case; a defect she cannot cure.

9    There is an additional problem with Plaintiff's complaint.  She never alleges

10    that she requested or was prevented from obtaining details regarding what personal

11    information Rodale disclosed for direct marketing purposes, nor does she allege

12    that she attempted to opt-out of sharing her personal information.  Put simply,

13    Plaintiff's allegations fail to demonstrate that she suffered an injury, even if Rodale

14    violated the Act, which it did not.  Thus, she fails to satisfy the basic Article III

15    standing requirement that every plaintiff must have suffered an "*injury in fact*", and

16    likewise fails to allege facts to satisfy the specific standing requirements of the Act,

17    which only authorizes a civil action for *injured* customers.  For this alternative

18    reason, the Court should dismiss this case with prejudice.

19    **II.**    **THE COMPLAINT**

20         **A.**    **Plaintiff's Allegations**

21    Plaintiff alleges that Rodale shares its subscribers' personal information with

22    third parties for direct marketing purposes without providing disclosures on its

23    website identifying what information is shared, with whom it is shared, and how

24    consumers can obtain that information.  (Comp. ¶¶ 32-33.)  She alleges that she

25    provided personal information to Rodale when subscribing to one of its magazines,

26    and that she visited Rodale's website on numerous occasions.  (Comp. ¶¶ 37-39.)

27    Plaintiff does not allege that she ever viewed the "Privacy Rights" section of

28    Rodale's website, requested information about how Rodale used her personal

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

2

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R.
CIV. P. 12(B)(6) AND 12(B)(1)

information, or that Rodale ever denied a request for such information.  She also does not allege that she asked Rodale not to share her personal information with other companies or organizations, or submitted such a request through any of the three free channels offered.

Plaintiff seeks to represent a putative class of all California residents who provided personal information to Rodale, asserting a cause of action for an alleged violation of Section 1798.83 and a derivative cause of action under California Business & Professions Code section 17200 ("UCL").  (Comp. ¶ 40.)

**B.  Rodale's Privacy Policy**

Exhibit 1 to Plaintiff's Complaint is a screen shot of the *Runner's World* website's introductory webpage.  (Comp. Ex. 1.)  A link titled "Privacy Rights/Community Guidelines" appears at the bottom of that webpage.  Consumers who click that link are taken to a webpage, attached as Exhibit 2 to the Complaint, titled "**Your Privacy Rights**," which appears in bolded green font at the top of the page.  (Comp. Ex. 2.)

The "**Your Privacy Rights**" webpage is a single webpage that can be viewed by scrolling down the screen; there are not separate webpages.  The "**Your Privacy Rights**" page contains a section titled "**What information do you collect about me?**"  That section discloses that "Rodale collects personal identifying information ('PII')," and proceeds to define "PII" to include "your name, postal address, e-mail address, telephone and cell phone numbers, wireless service provider, and all other information you provide to us."

The webpage also contains a section titled "**Your Privacy Rights**," which reads in full:

**Your Privacy Rights**

From time to time, we make your PII available to other reputable businesses whose products or services might be of value to you.  If you do not want us to share your PII with other

1    companies or organizations, please let us know by accessing the

2    form at http:www.rodale.come/cs/privacy.html, by calling us at

3    866-387-0509, or writing to us at Customer Service, Rodale,

4    Inc., 400 South Tenth Street, Emmaus, PA 18098.[1]

5  **III.    MOTION TO DISMISS STANDARD**

6        A complaint may be dismissed for failure to state a claim upon which relief

7  can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  Dismissal under Federal Rule of Civil

8  Procedure 12(b)(6) may be based on either (1) a lack of a cognizable legal theory,

9  or (2) insufficient facts under a cognizable legal theory.  *SmileCare Dental Grp. v.*

10 *Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (*citing Robertson*

11 *v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984)).

12       To plead sufficient facts to survive a motion to dismiss, a complaint must

13 allege facts that, "accepted as true, . . . 'state a claim to relief that is plausible on its

14 face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (*quoting Bell Atl. Corp. v. Twombly*,

15 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff

16 pleads factual content that allows the court to draw the reasonable inference that the

17 defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at

18 556).  "[W]here the well-pleaded facts do not permit the court to infer more than

19 the mere possibility of misconduct," the complaint has not sufficiently established

20 that the pleader is entitled to relief. *Id.* at 1950.  And although the Court's

21 consideration of the facts is ordinarily limited to the allegations of the complaint,

22 documents attached as exhibits to a complaint and the legislative history of a statute

23 may be considered in ruling on a 12(b)(6) motion. *United States v. Ritchie*, 342

24

25 ─────────────────

26 [1] The "Your Privacy Rights" webpage can be accessed through the Runner's World website or
   through Rodale's general website (www.rodale.com).  For the Court's convenience, Rodale
   attaches a color copy of the "Your Privacy Rights" webpage.  (RJN, Ex. 2.)  The above

27 disclosures and policies can also be viewed as they appear on a computer by visiting
   http://www.runnersworld.com/ and clicking the "Privacy Rights/Community Guidelines" link at

28 the bottom of the page.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R.
CIV. P. 12(B)(6) AND 12(B)(1)

F.3d 903, 908 (9th Cir. 2003); *Wishtoyo Found. v. Hattoy,* 2007 U.S. Dist. LEXIS 42951, *15-16, n.1 (C.D. Cal. 2007) (Feess, G.).

## IV.   PLAINTIFF'S FIRST CAUSE OF ACTION FAILS BECAUSE DEFENDANT COMPLIED WITH THE ACT.

### A.   The Act Provides for Two Alternative Means of Compliance.

The Act obligates companies with more than twenty employees that have shared personal information of California residents for direct marketing purposes within the preceding year to provide certain information regarding such disclosures upon request. Cal. Civ. Code § 1798.83(a). A business can comply with the Act in one of two ways. It can either (1) provide consumers with disclosures concerning personal information that the business shares with third parties and how to obtain that information [§1798.83(a)-(b)], or (2) it can give consumers a cost-free method to ask the company to not share the information with third parties [§1798.83(c)]. The Act does not require a business to do both. Because the complaint and attached Exhibits confirm that Rodale provided consumers with a cost-free method to opt-out of disclosure, Plaintiff's first cause of action fails as a matter of law.

#### 1.   The Act's Plain Language Confirms That Plaintiff's Can Comply With The Act In One Of Two Ways.

##### a.   The First Way To Comply With the Act.

One way a business can comply with the Act is to provide customers with the information required by subsection (a), and to notify customers of how to obtain that information in the way prescribed by subsection (b). These subsections work together. Subsection (a) identifies the specific information that businesses must provide consumers upon request, which includes the categories of information they provided to third parties and the names and addresses of those third parties. Cal. Civ. Code § 1798.83(a). And subsection (b) dictates the means by which a business must notify consumers of their right to request the information required by subsection (a). Cal. Civ. Code § 1798.83(b). As the statute's plain language

1  confirms, subsection (b)(1) is simply the mechanism by which a business is

2  required to "deliver requests pursuant to subdivision (a)." Cal. Civ. Code §

3  1798.83(b)(1).

4                    b.    The Second Way To Comply With The Act.

5        Subsection (c)(2) provides an alternative means to comply with the Act:

6              If a business that is required to comply with this section adopts

7              and discloses to the public, in its privacy policy, a policy . . . of

8              not disclosing the personal information of customers to third

9              parties for the third parties' direct marketing purposes if the

10             customer has exercised an option that prevents that information

11             from being disclosed to third parties for these purposes, as long

12             as the business maintains and discloses the policies, the business

13             may comply with subdivision (a) by notifying the customer of

14             his or her right to prevent disclosure of personal information,

15             and providing the customer with a cost-free means to exercise

16             that right.

17  Cal. Civ. Code § 1798.83(c)(2).

18        This provision effectively functions as an "on/off switch." So long as a

19  subject company adopts and discloses a cost-free opt-out policy, it complies with

20  the Act. This provision requires only that a subject business "*adopt*" a policy of

21  allowing customers to opt-out of the sharing of their personal information, and to

22  "*notify*" the customer of a cost-free means of exercising that option in "*its privacy*

23  *policy*." It does not specify any particular means of notification, or prescribe a

24  specific way for consumers to exercise their opt-out right. A business that

25  implements and properly discloses a cost-free opt-out policy complies with the Act.

26        Satisfying the requirements of subsection (c) is sufficient in itself. Because

27  subsection (b)(1) is simply the mechanism by which a business is required to

28  "deliver requests pursuant to subdivision (a)", if a business is not required to

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

6

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R.
CIV. P. 12(B)(6) AND 12(B)(1)

provide the information in subsection (a), then subsection (b) becomes irrelevant and simply does not apply.  Cal. Civ. Code § 1798.83(b)(1).  It would make no sense to require a business to provide consumers with notice of how to obtain information required by subsection (a), if the business is not required to provide the information in subdivision (a) at all.  In any event, Rodale complies with subsection (b)(1) by including a link on its webpage that "describe[s] a customer's rights pursuant to this section" (*i.e.*, the right to opt-out) in the format required by subsection (b)(1)(B).  (*See* RJN Ex. 2.)

### 2.    The Act's Legislative History Confirms That A Business Can Comply With The Act In One Of Two Ways.

The legislative history confirms that there are two alternative ways to comply with the Act.  The Act was first introduced in the Senate on December 2, 2002 as SB 27.  (RJN, Ex. 1 ("Legislative History of the Act as enacted in 2003") at 11.)[2] As first introduced, it contained only one means of compliance:

> a business that discloses a customer's personal information, including information relating to income or purchases, to a third party for direct marketing purposes to provide the customer, within 30 days after the customer's written request, a description of the sources of that information and copies of the information disclosed.  [RJN, Ex. 1 at 11.]

However, on April 20, 2003, the Senate amended SB 27 to add an alternative means of compliance, that is now subsection (c)(2).  (RJN, Ex. 1 at 30-31.)  After some additional revisions, the Legislature made its final amendments to SB 27 on September 5, 2003.  (RJN, Ex. 1 at 61.)  The post-amendment analysis provided to the Senate Committee on Judiciary confirms that the legislature specifically

---

[2] All cited page numbers to Exhibit 1 refer to the consecutive page numbers that appear at the bottom of the electronically filed RJN (i.e., RJN Ex. 1 - #.)

adopted two alternative methods of compliance in response to concerns by groups opposing the bill:

> This bill would require businesses to either: 1) disclose to customers, upon request, what categories of personal information the business shares with third parties for marketing purposes, or 2) provide customers with the ability to opt-out of having their information shared for marketing purposes . . .

> This bill would provide that the disclosure is not necessary if the business adopts, discloses, and maintains a privacy policy that provides the consumer with the opportunity to prevent information sharing for marketing purposes . . .

> During the course of discussions in the Assembly with interested parties, the author's office has responded to concerns expressed by business representatives by adopting the following major changes to the bill . . . 2) agreed to exempt businesses that provide consumers with an opt out for information sharing for marketing purposes . . .

> As a result of the changes to the bill in the Assembly, it essentially provides businesses with a choice; respond to consumer requests for information on how their personal information is being shared, or in the alternative, provide consumers with the ability to stop their information from being shared for marketing purposes.  [RJN, Ex. 1 at 93-99.]

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R.
CIV. P. 12(B)(6) AND 12(B)(1)

The Office of the Senate Floor Analyses also produced an Unfinished Business analysis of the Bill as last amended that described the amendment to provide an alternative means of compliance as follows:

> Assembly Amendments . . . (3) allow an option for businesses where, as an alternative to complying with the requirements of the bill, a business may choose instead to adopt a privacy policy that enables a customer to stop the business from sharing personal information, even with affiliated companies.  [RJN, Ex. 1 at 759.]

Governor Gray Davis signed SB27 into law on September 24, 2003.  (RJN, Ex. 1 at 75.) The Enrolled Bill Report that the bill's sponsor CALPIRG provided the Governor just two days prior to his signing, again confirmed the intent of the legislature two provide two methods of compliance:

> This bill would, effective January 2005, require business that disclose their customers' personal information to third parties for direct marketing purposes to either: 1) provide customers, within 30 days of their request, the categories of information disclosed, the names and addresses of the third parties, and examples of the products marketed; or, 2) maintain a privacy policy that provides consumers with a cost-free way to opt-in or opt-out of information sharing.  [RJN, Ex. 1 at 773.]

Thus, if the plain language of the Act were not clear enough, the legislative history leaves no doubt that a business can comply with the Act in one of two alternative ways.  It can either provide the disclosures required by subsections (a) and (b), or it can provide the disclosure required by subsection (c).  Businesses have a choice.  If a business chooses to comply with subsection (c), compliance with subsections (a) and (b) "is not necessary."

### B.   Rodale Complied With The Act By Notifying Customers Of A Cost-Free Means To Prevent the Disclosure Of Their "PII."

Rodale complied with the Act by notifying consumers of a cost-free method to prevent their information from being shared for marketing purposes.  Cal. Civ. Code § 1798.83(c)(2).  Indeed, Rodale's Privacy Rights screen shot (attached to the complaint) informed consumers:

> If you do not want us to share your PII with other companies or organizations, please let us know by accessing the form at http:www.rodale.come/cs/privacy.html, by calling us at 866-387-0509, or writing to us at Customer Service, Rodale, Inc., 400 South Tenth Street, Emmaus, PA 18098.  [Comp., Ex. 2.]

This disclosure "notif[ies] the customer of his or her right to prevent disclosure of personal information, and provid[es] the customer with a cost-free means to exercise that right", as required by the Act.  Cal. Civ. Code § 1798.83(c)(2).  This disclosure alone confirms Rodale's compliance with the Act.

Rodale actually went beyond what the Act requires.  Though the Act only requires that a business provide customers "a cost-free means" to prevent the disclosure their personal information, Rodale provided three separate cost-free methods.  In addition, and though not required, Rodale described in detail the "PII" that it disclosed so that customers could meaningfully exercise their right to prevent the disclosure of that information.

Rodale complied with the Act as a matter of law.  This is fatal to Plaintiff's claims, and cannot be cured by amendment.  The Court should dismiss the first cause of action with prejudice.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

10

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R.
CIV. P. 12(B)(6) AND 12(B)(1)

## V.   PLAINTIFF'S SECOND CAUSE OF ACTION FAILS WITH HER FIRST CAUSE OF ACTION.

Plaintiff's second cause of action alleges that Rodale violated the "unlawful" prong of the UCL by violating Civil Code § 1798.83.  To state a claim for an 'unlawful' business practice under the UCL, a plaintiff must assert the violation of any other law.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 183 (1999) ("[a]cts that the Legislature has determined to be lawful may not form the basis for an action under the unfair competition law . . . .").  Where a plaintiff cannot state a claim under the 'borrowed' law, she cannot state a UCL claim either.  *See, e.g., Olszewski v. Scripps Health*, 30 Cal. 4th 798, 828 (2003) (dismissing UCL claim where complaint alleges no act in violation of a law); *see also Charlson v. Wachovia Mortg. Corp.*, 2009 U.S. Dist. LEXIS 99307, *14-15 (C.D. Cal. 2009) (Feess, G.) (dismissing UCL claim based on TILA violation, where TILA claim failed).

Here, Plaintiff predicates her "unlawful" business practices claim solely on her Civil Code § 1798.83 claim.  (Comp. ¶ 65.)  As discussed above, Plaintiff cannot state a claim under Civil Code § 1798.83 as a matter of law.  Accordingly, Plaintiff's UCL claim likewise fails.

## VI.   IN THE ALTERNATIVE, PLAINTIFF'S FIRST AND SECOND CAUSES OF ACTION SHOULD BE DISMISSED BECAUSE SHE HAS ALLEGED NO FACTS TO ESTABLISH ARTICLE III OR STATUTORY STANDING.

### A.   Plaintiff Alleges No Facts to Establish Article III Standing.

The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring that plaintiffs have standing.  *Allen v. Wright*, 468 U.S. 737, 750 (1984).  "'[A] plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief that is sought.'"  *Davis v. Fed. Elec. Comn'n*, 554 U.S. 724, 734 (2008) (*quoting Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

"[T]he irreducible constitutional minimum of standing contains three elements," all of which the party invoking federal jurisdiction bears the burden of establishing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). **First**, the plaintiff must prove that he suffered an "injury in fact," i.e., an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id*. at 560 (citations, internal quotation marks, and footnote omitted). **Second**, the plaintiff must establish a causal connection by proving that her injury is fairly traceable to the challenged conduct of the defendant. *Id*. at 560-61. **Third**, the plaintiff must show that her injury will likely be redressed by a favorable decision. *Id*. at 561. In addition, a plaintiff seeking injunctive relief must establish a fourth element: a "real and immediate threat of repeated injury" demonstrated by more than "past exposure to illegal conduct." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102(1983) (*quoting O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

The standing inquiry is individualized and requires that any alleged "injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 561, n. 1. "There must be a 'personal stake in the outcome' such as to 'assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.'" *O'Shea*, 414 U.S. at 494-95 (*quoting Baker v. Carr*, 369 U.S. 186, 204 (1962). "Abstract injury is not enough. It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged statute or official conduct." *O'Shea*, 414 U.S. at 494-495 (*quoting Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)).

Because standing is a "threshold requirement," to survive a motion to dismiss, a plaintiff must allege facts that, if proven, would confer standing. *O'Shea*, 414 U.S. at 493-94; *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 771 (9th Cir. 2006). Failure to allege any of the elements of standing with

specificity warrants dismissal. *Baldwin v. Sebelius*, 654 F.3d 877, 879-80 (9th Cir. 2011) (affirming motion to dismiss for insufficient allegations of "injury in fact"); *Chandler v. State Farm Mut. Auto Ins. Co.*, 596 F.Supp.2d 1314, 1322 (C.D. Cal. 2008) (Feess, G.) (granting motion to dismiss for lack of standing where plaintiff did not allege that injury was fairly traceable to defendant's conduct).

Here, Plaintiff has alleged no facts to establish any of the standing elements. Plaintiff merely alleges that she subscribed to a magazine published by Rodale, provided Rodale her personal information, and visited Rodale's website. (Comp. ¶¶ 36-39.) Plaintiff nowhere alleges that she requested information about Rodale's use and disclosure of her personal information, ever viewed Rodale's "Privacy Rights" section, or that Rodale ever denied her request for such information. She has utterly failed to demonstrate that she suffered an "injury in fact" flowing from any alleged wrongdoing of Rodale, or that any alleged wrongdoing affected her "in a personal and individual way." *Lujan*, 504 U.S. at 561, n. 1. Her claims should be dismissed for this alternative reason.

That Plaintiff is seeking statutory penalties does not create standing that otherwise does not exist. The standing principles are the same where statutory claims are alleged. *United States v. SCRAP*, 412 U.S. 669, 687 (1973). The lack of an adequate allegation of injury is the entire game, because "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997); *see also Cetacean v. Community. v. Bush*, 386 F.3d 1169, 1174-75 (9th Cir. 2004) ("If a plaintiff lacks Article III standing, Congress may not confer standing on that plaintiff by statute."). While Congress may expand the universe of legal rights for which citizens may sue for redress, such exercises "involve[] Congress' elevating to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law . . . ." *Lujan*, 504 U.S. at 578; *see also* Lawrence A. Tribe, American Constitutional Law, at 396 (3d ed., Vol.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

13

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R.
CIV. P. 12(B)(6) AND 12(B)(1)

1 2000) ("Thus, *Lujan* holds that Article III is a constraint upon congressionally conferred, as well as judicially inferred, standing, and that Congress may not bestow standing to sue except where the courts would otherwise find that the basis requirements of 'injury in fact' are already met.").

### B.  In Any Event, Plaintiff Alleges No Facts To Establish Statutory Standing Under Under The UCL Or The Act.

Only "if a plaintiff has suffered sufficient injury to satisfy Article III, a federal court must [then] ask whether a statute has conferred 'standing' on that plaintiff." *Cetacean,* 386 F.3d at 1174-75 (9th Cir. 2004).  Unlike a dismissal for lack of Article III standing, a dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim under Fed. R. Civ. P. § 12(b)(6). *Vaugn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009).  Here, Plaintiff has failed to allege any facts to establish standing under the UCL or the Act.

### 1.  Plaintiff Lacks Standing Under The UCL.

Under the UCL, a plaintiff must plead and prove that he "suffered injury in fact and a loss of money or property as a result of [the alleged] unfair competition." Bus. & Prof. Code § 17204.  UCL plaintiffs cannot act as self-appointed private attorneys general seeking to vindicate the rights of others allegedly impacted by UCL violations.  *Californians for Disability Rights v. Mervyn's, L.L.C.*, 39 Cal.4th 223 (2006); *Kwikset Corporation v. Superior Court*, 51 Cal.4th 310, 317 (2011). As set forth above, Plaintiff alleges no facts to establish that she lost any money or property as a result of any alleged wrongful conduct of Rodale.  Accordingly, her UCL claim separately fails for this reason.

### 2.  Plaintiff Lacks Standing Under The Act.

Section 1798.84 prescribes the remedies available under the Act.  Cal. Civ. Code § 1798.84.  It only authorizes "injured" customers to initiate a civil action: "Any customer injured by a violation of this title may institute a civil action to

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

14

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R.
CIV. P. 12(B)(6) AND 12(B)(1)

recover damages." Cal. Civ. Code § 1798.84(b).  An injured customer who initiates a civil action may also recover civil penalties for willful, intentional or reckless violations:  "In addition, for a willful, intentional, or reckless violation of Section 1798.83, a customer may recover a civil penalty . . . ."  Cal. Civ. Code § 1798.84(c).  Here, Plaintiff has not alleged any facts to establish that she was "injured."  She therefore lacks standing to initiate a civil action under Section 1798.83.

The civil penalty provision of Section 1798.84(c) does not authorize a customer to initiate a civil action to recover penalties absent injury.  Such an interpretation conflicts with the plain language of the statute.  Only Section 1798.84(b) contains express language authorizing a civil action.  Section 1798.84(c) merely provides customers subject to willful, intentional, or reckless violations with *an additional* remedy in the form of civil penalties.  This is conclusion is consistent with the jurisprudence, discussed above, holding that Congress cannot eviscerate Article III standing requirements and confer standing to uninjured litigants.  Thus, an injured customer authorized to bring a civil action under Section 1798.84(b) also has the opportunity to recover civil penalties.  But a customer without injury at all, cannot initiate a civil action.

Even assuming *arguendo* that Section 1798.84(c) authorizes a customer to bring a civil action absent injury, it is still limited to a customer who is subject to a "violation of Section 1798.83".  Cal. Civ. Code § 1798.84(c).  By its express language, Section 1798.83 requires businesses to disclose specified information only ". . . after the receipt of a written or electronic mail request . . . ."  Cal. Civ. Code § 1798.83 (a).  And one way a business can comply with Section 1798.83 is to simply make the information "readily available upon request."  Cal. Civ. Code § 1798.83 (b)(1)(C).  Here, Plaintiff has not alleged that she ever requested information under Section 1798.83, or that she wanted to, but was unable to.  She, therefore, has not alleged that she was subjected to a violation of Section 1798.83,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

15

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R.
CIV. P. 12(B)(6) AND 12(B)(1)

1    and does not have standing to recover civil penalties, even assuming she were

2    allowed to do so absent injury.

3          Under Plaintiff's theory of the case, every consumer who subscribes to a

4    magazine from Rodale would have standing to sue Rodale under the Act.  The Act

5    simply does not confer such broad standing.  Plaintiff's theory, that a consumer

6    who never requested the information under the Act could establish a personal stake

7    in the outcome of the litigation necessary to confer standing, would be an extreme

8    departure from accepted pleading standards and basic Article III and statutory

9    standing principles.

10   **VII.   <u>CONCLUSION</u>**

11         Rodale complied with the Act by providing consumers with a cost-free

12   method to prevent the disclosures of their personal information.  That should end

13   this case.  But, in addition, Plaintiff's Complaint contains no factual allegations that

14   she was in anyway impacted as a result of any alleged wrongful conduct of Rodale.

15   She therefore lacks Article III and statutory standing, separately warranting

16   dismissal.  The Court should dismiss the Complaint with prejudice.

Dated:  February 27, 2012          MANATT, PHELPS & PHILLIPS, LLP
                                   BRAD W. SEILING
                                   JUSTIN C. JOHNSON


                                   By:  _____/s/ Brad W. Seiling_____
                                        Brad W. Seiling
                                        *Attorneys for Defendant*
                                        RODALE INC.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R.
CIV. P. 12(B)(6) AND 12(B)(1)