LINK: 24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-00585 GAF (AGRx) | Date | August 29, 2012 |
|---|---|---|---|
| Title | Charlotte Baxter v. Rodale, Inc. | | |

| Present: The Honorable | **GARY ALLEN FEESS** | | |
|---|---|---|---|
| Chris Silva for Renee Fisher | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| None | | None | |

**Proceedings:**      (In Chambers)

### ORDER RE: MOTION TO DISMISS

**I.
INTRODUCTION & BACKGROUND**

Plaintiff Charlotte Baxter brings this putative class action against Defendant Rodale, Inc. ("Rodale"), alleging that Rodale violated California's "Shine the Light" law in failing to make certain disclosures concerning its distribution of customer information to third party marketers. (Docket No. 1, Compl.)  Rodale now moves to dismiss the complaint, contending that its privacy policy fully complies with the statute, and that Baxter lacks standing to bring the claims asserted. (Docket No. 24, Mem.)  For the reasons set forth below, the Court concludes that the motion should be **GRANTED**.

Rodale publishes a number of magazines and owns and operates several websites related to those magazines, including "Runner's World" and www.runnersworld.com.  (Compl. ¶¶ 6, 11, 29, 37.)  Before customers can subscribe to Rodale's magazines or access the subscriber section of these websites, they are required to disclose certain personal information, including their name, mailing address, e-mail address, telephone number, gender, and date of birth.  (<u>Id.</u> ¶ 30.) Baxter alleges that Rodale maintains this information on its servers, and profits by sharing it with third parties, who use the information for direct marketing purposes.  (<u>Id.</u> ¶¶ 8, 31–32.)

In or around 2011, Baxter subscribed to "Runner's World" magazine, which is owned, operated, and published by Rodale.  (<u>Id.</u> ¶¶ 36, 37.)  Like all other subscribers, Baxter disclosed to Rodale her name, mailing address, e-mail address, ZIP code, gender, and birth date, among

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-00585 GAF (AGRx) | Date | August 29, 2012 |
|---|---|---|---|
| Title | Charlotte Baxter v. Rodale, Inc. | | |

other personal information.  (Id. ¶ 38.)  Since subscribing, Baxter has visited www.runnersworld.com on numerous occasions, and has received the magazine.  (Id. ¶ 39.)

Baxter alleges that Rodale violated California's Shine the Light law, intended to "protect consumers from companies that collect and surreptitiously share their sensitive personal information with third parties," by "willfully denying its users an opportunity to exercise their legally proscribed rights under the Act."  (Id. ¶¶ 1, 9.)  In particular, Baxter alleges that, "despite the fact that Rodale shares information about its users with third parties for direct marketing purposes, it fails to provide its customers with the Shine the Light Disclosures, or the means through which its customers may obtain the Disclosures, as required by the Act."  (Id. ¶ 33.)

Baxter alleges that her personal information has monetary value, and that Rodale's failure to comply with section 1798.83(b)(1) of the Act "deprives [her] of [her] statutorily-guaranteed right to monitor and control the disclosure and use of that data."  (Compl. ¶ 56.)  As such, Baxter alleges that "Rodale has diluted the value of [her] personal property, and deprived [her] of the opportunity to sell [her] personal property for [her] own financial gain."  (Id.)  Baxter alleges that she and the putative class have "sustained, and continue to sustain, monetary injuries as a direct and proximate cause of Rodale's violation" of section 1798.83.  (Id.)

On the basis of these facts, Baxter brings claims for [1] violation of California's Shine the Light law, Cal. Civ. Code § 1798.83, and [2] violations of California's unfair competition law, Cal. Bus. & Prof. Code §§ 17200 et seq.  (Id. ¶¶ 48–65.)

On April 12, 2012, the Court ordered Baxter to show cause as to why the case should not be dismissed for lack of subject matter jurisdiction.  (Docket No. 33.)  The parties subsequently conducted limited jurisdictional discovery, and the Court vacated the OSC on July 2, 2012.  (Docket No. 37.)

**II.
DISCUSSION**

**A.  LEGAL STANDARDS**

Lack of subject-matter jurisdiction is grounds for dismissal under Federal Rule of Civil Procedure 12(b)(1).  See Fed. R. Civ. P. 12(b)(1).  Where a plaintiff lacks standing, a federal court lacks subject matter jurisdiction to hear the suit.  Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004).  Accordingly, federal courts must determine issues of subject matter jurisdiction before addressing the merits of a case.  See Steel Co. v. Citizens for a Better Env't,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-00585 GAF (AGRx) | Date | August 29, 2012 |
|---|---|---|---|
| Title | Charlotte Baxter v. Rodale, Inc. | | |

523 U.S. 83, 94 (1998). The party invoking federal jurisdiction bears the burden of establishing standing. Lopez v. Candaele, 630 F.3d 775, 784–785 (9th Cir. 2010).

A complaint may also be dismissed for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). On a motion to dismiss under Rule 12(b)(6), a court must accept as true all factual allegations pleaded in the complaint and must construe them "in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996); see also Stoner v. Santa Clara County Office of Educ., 502 F.3d 1116, 1120–21 (9th Cir. 2007). Dismissal under Rule 12(b)(6) may be based on either "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." SmileCare Dental Group v. Delta Dental Plan of Calif., Inc., 88 F.3d 780, 783 (9th Cir. 1996).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to require that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not established that the pleader is entitled to relief. Id. at 1950.

Although a complaint generally need not contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation, alteration, and internal quotation marks omitted). Similarly, a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions . . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679; see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-00585 GAF (AGRx) | Date | August 29, 2012 |
|---|---|---|---|
| Title | Charlotte Baxter v. Rodale, Inc. | | |

**B. STANDING**

Rodale contends that Baxter has failed to adequately allege either Article III or statutory standing.

**1. ARTICLE III STANDING**

The constitutional standing doctrine requires those seeking to invoke federal jurisdiction to "satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983). The standing inquiry asks "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues," and "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. 490, 498 (1975). To satisfy Article III's standing requirements, a plaintiff must show that "'[1] it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; [2] the injury is fairly traceable to the challenged action of the defendant; and [3] it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011) (quoting Friends of the Earth v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180–81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)).

Rodale contends that Baxter has failed to adequately allege an "injury in fact" that meets Article III's standing requirements. (Mem. at 13.) Specifically, Rodale argues that Baxter "merely alleges that she subscribed to a magazine published by Rodale, provided Rodale with her personal information, and visited Rodale's website," but that she has failed to allege that she "requested information about Rodale's use and disclosure of her personal information, ever viewed Rodale's 'Privacy Rights' section, or that Rodale ever denied her request for such information." (Id.) Therefore, Rodale contends, Baxter has "failed to demonstrate that she suffered an 'injury in fact' flowing from any alleged wrongdoing of Rodale, or that any alleged wrongdoing affected her 'in a personal and individual way.'" (Id.)

After vacating its April 12 Order to Show Cause, the Court requested supplemental briefing on this issue, citing a recent decision in the Central District of California dismissing a similar Shine the Light lawsuit for lack of standing. See Boorstein v. Men's Journal LLC, 2012 WL 2152815, at *3 (C.D. Cal. Jun. 14, 2012). The parties filed timely responses to the Court's request on July 23, 2012. (Docket Nos. 38, 39.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-00585 GAF (AGRx) | Date | August 29, 2012 |
|---|---|---|---|
| Title | Charlotte Baxter v. Rodale, Inc. | | |

    Having considered the parties' various submissions and all relevant authorities, the Court finds that Baxter has adequately alleged Article III standing. The first prong of the constitutional standing analysis requires that a plaintiff allege "an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. That injury "must affect the plaintiff in a personal and individual way." Id. at 561 n. 1. Moreover, "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." Id. at 563.

    The Supreme Court has long held that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." FEC v. Akins, 524 U.S. 11, 21 (1998) (citing Public Citizen v. Dep't of Justice, 491 U.S. 440, 449 (1989)). See also Havens Realty Corp. v. Coleman, 455 U.S. 363, 373–374 (1982) ("Section 804(d), which, in terms, establishes an enforceable right to truthful information concerning the availability of housing, is such an enactment. A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions.")

    Baxter alleges that she was a Rodale customer; that she visited Rodale's website on several occasions; that Rodale was required to disclose certain information pertaining to her rights under the Act; and that Rodale's failure to disclose such information caused her to suffer economic injury. Baxter contends that this was, in the Supreme Court's words, "precisely the form [of injury] the statute was intended to guard against." Havens Realty, 455 U.S. at 373.

    Rodale nevertheless contends that the Supreme Court's "informational standing" jurisprudence presupposes a specific request for information by the plaintiff seeking to establish standing. Confronted with the very same issue, the Boorstein court agreed, finding that "the existing case law only recognizes such 'informational injury' where the plaintiffs have requested information and have subsequently been denied it." 2012 WL215815, at *3. The court reasoned that:

> This approach to defining an "injury" is supported by the provisions of the [Shine the Light] law, which specifically allow a customer to recover damages where a business has failed to provide information, provided inaccurate or incomplete information, or failed to provide information in a timely manner. See Cal. Civ. Code §§ 1798.84(b)—(c). Each of these provisions clearly contemplates a previous request for information.

Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-00585 GAF (AGRx) | Date | August 29, 2012 |
|---|---|---|---|
| Title | Charlotte Baxter v. Rodale, Inc. | | |

    Based on its review of the relatively spare Supreme Court precedent on the issue, Rodale notes that each of these cases involved what could be termed a prior "request." See Akins, 524 U.S. at 16 ("[Plaintiffs] asked the FEC to find that AIPAC had violated the Act, and, among other things, to order AIPAC to make public the information that FECA demands of a "political committee.""); Public Citizen, 491 U.S. at 449 ("[A]ppellants are attempting to compel the Justice Department and the ABA Committee to comply with FACA's charter and notice requirements, and . . . seek access to the ABA Committee's meetings and records in order to monitor its workings and participate more effectively in the judicial selection process."); Havens Realty, 455 U.S. at 374 ("In the instant case, respondent . . . alleged injury to her statutorily created right to truthful housing information. As part of the complaint, she averred that petitioners told her on four different occasions that apartments were not available in the Henrico County complexes while informing white testers that apartments were available.") Rodale thus contends that "cases analyzing information injury under Article III . . . confirm that a violation of a statute mandating publication of specified information, without more, does not qualify as a cognizable injury." (Def.'s Supp Mem. at 6.)

    Rodale's argument is literally correct but off target because the issue of whether a request was necessary for standing was not raised in any of these decisions. In contract, in the two circuit cases where the issue was squarely presented, the courts held that no such request is required to establish Article III standing. In American Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Com'n, two environmental groups argued that the failure of the city and its water and sewer commission to make certain disclosures required under the Clean Air Act "deprived [the groups' members] of the ability to make choices about whether it was 'safe to fish, paddle, and recreate in th[e] waterway.'" 389 F.3d 536, 539—540 (6th Cir. 2004). The Sixth Circuit explicitly found that the environmental groups were not required to request that information prior to bringing suit:

> Although this case involves a situation in which no agency previously denied the information desired to the plaintiffs, the injury remains the same. The question of a previous agency denial may be relevant to principles of exhaustion, but as for the injury alleged, American Canoe and Sierra Club desire certain information that the defendants are allegedly under a legal obligation to provide. This is precisely the injury alleged in Public Citizen and in the Freedom of Information Act cases. This might be a "generalized grievance" in the sense that up to the point they request it, the plaintiffs have an interest in the information shared by every other person, but it is not an abstract grievance in the sense condemned in Akins: the injury alleged is not that the defendants are merely failing to obey the law, it is that they are disobeying the law in failing to provide information that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-00585 GAF (AGRx) | Date | August 29, 2012 |
|---|---|---|---|
| Title | Charlotte Baxter v. Rodale, Inc. | | |

> the plaintiffs desire and allegedly need. This is all that plaintiffs should have to allege to demonstrate informational standing where Congress has provided a broad right of action to vindicate that informational right.

Id. at 545—546 (citing Cass R. Sunstein, Informational Regulation and Informational Standing: Akins and Beyond, 147 U. Pa. L. Rev. 613, 643 n. 154 ("All that is clear is that after Akins a deprivation of information consists of an injury in fact if Congress has said so.")).

Similarly, in Grant ex rel. Family Eldercare v. Gilbert, the Fifth Circuit held that a nursing home resident had standing to sue notwithstanding his failure to previously apply for services related to the information sought:

> . . . Grant alleges that the state's failure to provide adequate information from 1991 to 1993 has inhibited him from making an informed decision regarding whether to apply for waiver services. Indeed, an affidavit by a supervisor of state employees who make eligibility determinations confirms that Grant was eligible to apply for waiver services when he sued. Though his right to information allegedly was infringed by the state only from 1991 to 1993, the injury is accompanied by "continuing, present adverse effects." To decide that Grant lacks informational standing would require others in his position to apply for services before obtaining information, a result that, in his words, puts the cart before the horse.

Id. at 388 (citations omitted).

Circuit courts addressing the issue have also focused on the purposes of the underlying statutes, finding that laws expressly aimed at providing information to the public are more likely to create informational standing. See Bensman v. U.S. Forest Service, 408 F.3d 945 (7th Cir. 2005) (noting that "statutes like FOIA and FACA that have served as the basis for informational standing have a goal of providing information to the public . . . ."); American Canoe, 389 F.3d at 549 (Kennedy, J. concurring and dissenting in part) (noting that cases finding informational standing "involved statutes that specifically granted individuals and groups the right to the information they sought."). The Ninth Circuit has cited the Bensman decision with approval, stating that "[t]o ground a claim to standing on an informational injury, the [underlying statute] must grant a right to information capable of supporting a lawsuit," and noting that "statutes like FOIA and FACA that have served as the basis for informational standing have a goal of providing information to the public . . . ." Wilderness Soc., Inc. v. Rey, 622 F.3d 1251, 1259 (9th Cir. 2010). Thus, based on decisions of the Fifth and Sixth Circuit, the Court concludes that

Case 2:12-cv-00585-GAF-AGR  Document 42  Filed 08/29/12  Page 8 of 16  Page ID #:1139

LINK: 24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-00585 GAF (AGRx) | Date | August 29, 2012 |
|---|---|---|---|
| Title | Charlotte Baxter v. Rodale, Inc. | | |

a request for information need not be shown to establish standing under the Shine the Light law. But see Boorstein, 2012 WL 2152815 *3.

The precedent thus weighs in favor of finding "informational standing" in these circumstances, and this Court finds no reason to read Rodale's proposed limitation into the Supreme Court's case law. Notably, the Supreme Court has long spoken of informational standing as arising where "the plaintiff fails to obtain information which must be publicly disclosed pursuant to . . . statute." Akins, 521 U.S. at 21 (citing Public Citizen, 491 U.S. at 449) (emphasis added). As an initial matter, the Court notes both that the word "obtain" in no way presupposes that he who "obtains" has made a prior request, and that the latter part of this formulation is phrased in the passive voice – that is, the information "must be publicly disclosed" – rather than referencing one to which that information must be so disclosed.

More fundamentally, however, Rodale's standing challenge misconceives the underlying purposes of the "injury in fact" requirement, and the way this requirement was applied in Akins. The Supreme Court has repeatedly stated that the concrete injury requirement "helps assure that courts will not 'pass upon . . . abstract, intellectual problems,' but adjudicate 'concrete, living contest[s] between adversaries.'" Akins, 524 U.S. at 20 (citing Coleman v. Miller, 307 U.S. 433, 460 (1939)). In Akins, the Supreme Court held that the plaintiffs' injury was sufficiently "concrete and particular" not because they had previously requested the information at issue, but because "[t]here [was] no reason to doubt their claim that the information would help them (and others to whom they would communicate it) to evaluate candidates for public office . . . ." Id. at 21. Accordingly, the Court's standing inquiry was focused on the relationship between the plaintiffs and the information qua information, rather than what they had previously done to retrieve the information. In this case, standing is similarly constrained by the limited universe of people who have submitted subscriber data to Rodale and then visited the company's website to learn how their own personal information is being used.

Finally, the Akins court reached that conclusion notwithstanding the fact that the plaintiffs there were seeking information from a governmental agency, where the "injury" requirement bears what the Supreme Court has termed "separation-of-powers significance." See Lujan, 504 U.S. at 577 ("If the concrete injury requirement has the separation-of-powers significance we have always said, the answer must be obvious: To permit Congress to convert the undifferentiated public interest in executive officers' compliance with the law into an 'individual right' vindicable in the courts is to permit Congress to transfer from the President to the courts the Chief Executive's most important constitutional duty, to 'take Care that the Laws be faithfully executed, has . . . separation-of-powers significance' . . . ."). Rodale's standing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-00585 GAF (AGRx) | Date | August 29, 2012 |
|---|---|---|---|
| Title | Charlotte Baxter v. Rodale, Inc. | | |

argument is thus particularly unpersuasive where subscribers are seeking to have private businesses disclose information related to the use of their own subscriber data.

In sum, the Court finds little support for Rodale's proposed standing limitation in the authorities, and no persuasive reason to that limitation into the case law. The allegations contained in the complaint are sufficient to meet Article III's "injury in fact" requirement.

### 2. STATUTORY STANDING

"[I]f a plaintiff has suffered sufficient injury to satisfy Article III, a federal court must ask whether a statute has conferred 'standing' on that plaintiff." Cetacean Community v. Bush, 386 F.3d 1169, 1175 (9th Cir. 2004). That inquiry asks whether "a particular plaintiff has been granted a right to sue by the specific statute under which he or she brings suit." City of Sausalito v. O'Neil, 386 F.3d 1186, 1199 (9th Cir. 2004).

Section 1798.84(b) of the California Civil Code provides that "[a]ny customer injured by a violation of [the Act] may institute a civil action to recover damages." Cal. Civ. Code §1798.84(b). Moreover, section 1798.84(c) provides that "for a willful, intentional, or reckless violation of Section 1798.83, a customer may recover a civil penalty . . . ." Id. §1798.84(c).

Rodale asserts that section 1798.84's "injury component is plainly distinct from a mere violation of the Act," and that this "distinct injury requirement presupposes a prior request for information and a failure to receive it." (Def's Supp. Mem. at 2—3.) Rodale then re-iterates that, because section 1798.83 allows businesses to comply with the Act by making the requisite information "readily available upon request," and because Baxter never made such a request, she therefore lacks standing to sue under the Act. (Id. at 3.)

Rodale's attempt to transform a substantive argument about its obligations under the statute into a standing challenge is unavailing. The parties do not dispute that compliance with the Shine the Light law imposes certain affirmative duties on Rodale related to its customers' personal information, and the use of such information by third parties. See Cal. Civ. Code § 1798.83(a)–(c). Because under its own interpretation of the Act all such obligations have been complied with, Rodale contends that Baxter could not have been "injured" merely by submitting her subscriber data, visiting the website, and not finding the requisite disclosures. Baxter, however, alleges that, properly interpreted, the Act required Rodale to make additional disclosures, and that she was injured by the company's failure to do so. The Court has already concluded that, if the Shine the Light law requires, and Rodale failed to make such additional disclosures, Baxter would have suffered "informational injury" sufficient to establish standing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-00585 GAF (AGRx) | Date | August 29, 2012 |
|---|---|---|---|
| Title | Charlotte Baxter v. Rodale, Inc. | | |

Accordingly, the existence of any such injury constitutes a merits question revolving around this Court's interpretation of the Act's disclosure requirements, and Rodale's arguments concerning statutory "injury" must await that determination.

For purposes of pleading statutory standing, therefore, Baxter has adequately alleged that she suffered an "injury" due to Rodale's failure to comply with the Act. Whether Baxter has adequately alleged an actual <u>violation</u> of the Shine the Light law, however, is the difficult question of first impression raised by this motion, and to which the Court now turns.

## C. FAILURE TO STATE A CLAIM

Baxter alleges that Rodale has failed to [1] designate contact information for customers to deliver requests pursuant to the Act; [2] disclose their customers' rights under the Act; and/or [3] perform any of the Act's three alternative methods for providing such disclosures.

### 1. STATUTORY LANGUAGE

Section 1798.83(a) sets out the Act's primary disclosure obligations for businesses that share customers' personal information with third parties:

> (a) Except as otherwise provided in subdivision (d), if a business has an established business relationship with a customer and has within the immediately preceding calendar year disclosed personal information that corresponds to any of the categories of personal information set forth in paragraph (6) of subdivision (e) to third parties, and if the business knows or reasonably should know that the third parties used the personal information for the third parties' direct marketing purposes, <u>that business shall, after the receipt of a written or electronic mail request, or, if the business chooses to receive requests by toll-free telephone or facsimile numbers, a telephone or facsimile request from the customer, provide all of the following information to the customer free of charge</u>:
>
> > (1) In writing or by electronic mail, a list of the categories set forth in paragraph (6) of subdivision (e) that correspond to the personal information disclosed by the business to third parties for the third parties' direct marketing purposes during the immediately preceding calendar year.
> >
> > (2) In writing or by electronic mail, the names and addresses of all of the third parties that received personal information from the business for the third parties' direct

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-00585 GAF (AGRx) | Date | August 29, 2012 |
|---|---|---|---|
| Title | Charlotte Baxter v. Rodale, Inc. | | |

> marketing purposes during the preceding calendar year and, if the nature of the third parties' business cannot reasonably be determined from the third parties' name, examples of the products or services marketed, if known to the business, sufficient to give the customer a reasonable indication of the nature of the third parties' business.

Cal. Civ. Code § 1798.83(a) (emphasis added).

Subsection (b) of section 1798.83 further specifies the manner in which businesses must comply with these disclosure obligations:

> (b)
>
> (1) A business required to comply with this section shall designate a mailing address, electronic mail address, or, if the business chooses to receive requests by telephone or facsimile, a toll-free telephone or facsimile number, to which customers may deliver requests pursuant to subdivision (a). A business required to comply with this section shall, at its election, do at least one of the following:
>
>> (A) Notify all agents and managers who directly supervise employees who regularly have contact with customers of the designated addresses or numbers or the means to obtain those addresses or numbers and instruct those employees that customers who inquire about the business's privacy practices or the business's compliance with this section shall be informed of the designated addresses or numbers or the means to obtain the addresses or numbers.
>>
>> (B) Add to the home page of its Web site a link either to a page titled "Your Privacy Rights" or add the words "Your Privacy Rights" to the home page's link to the business's privacy policy. If the business elects to add the words "Your Privacy Rights" to the link to the business's privacy policy, the words "Your Privacy Rights" shall be in the same style and size as the link to the business's privacy policy. If the business does not display a link to its privacy policy on the home page of its Web site, or does not have a privacy policy, the words "Your Privacy Rights" shall be written in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks that call attention to the language. The first page of the link shall describe a customer's rights pursuant to this section and shall provide the designated mailing address, e-mail address, as required, or toll-free telephone number or facsimile number, as appropriate. If the business elects to add the words "Your

Case 2:12-cv-00585-GAF-AGR Document 42 Filed 08/29/12 Page 12 of 16 Page ID #:1143

LINK: 24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-00585 GAF (AGRx) | Date | August 29, 2012 |
|---|---|---|---|
| Title | Charlotte Baxter v. Rodale, Inc. | | |

California Privacy Rights" to the home page's link to the business's privacy policy in a manner that complies with this subdivision, and the first page of the link describes a customer's rights pursuant to this section, and provides the designated mailing address, electronic mailing address, as required, or toll-free telephone or facsimile number, as appropriate, the business need not respond to requests that are not received at one of the designated addresses or numbers.

(C) Make the designated addresses or numbers, or means to obtain the designated addresses or numbers, readily available upon request of a customer at every place of business in California where the business or its agents regularly have contact with customers.

The response to a request pursuant to this section received at one of the designated addresses or numbers shall be provided within 30 days. Requests received by the business at other than one of the designated addresses or numbers shall be provided within a reasonable period, in light of the circumstances related to how the request was received, but not to exceed 150 days from the date received.

(2) A business that is required to comply with this section and Section 6803 of Title 15 of the United States Code may comply with this section by providing the customer the disclosure required by Section 6803 of Title 15 of the United States Code, but only if the disclosure also complies with this section.

(3) A business that is required to comply with this section is not obligated to provide information associated with specific individuals and may provide the information required by this section in standardized format.

Id. § 1798.83(b).

Finally, subsection (c) of section 1798.83, which Rodale contends provides a completely alternative method of compliance with the statute, states that:

(c)

(1) A business that is required to comply with this section is not obligated to do so in response to a request from a customer more than once during the course of any calendar year. A business with fewer than 20 full-time or part-time employees is exempt from the requirements of this section.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-00585 GAF (AGRx) | Date | August 29, 2012 |
|---|---|---|---|
| Title | Charlotte Baxter v. Rodale, Inc. | | |

(2) If a business that is required to comply with this section adopts and discloses to the public, in its privacy policy, a policy of not disclosing personal information of customers to third parties for the third parties' direct marketing purposes unless the customer first affirmatively agrees to that disclosure, or of not disclosing the personal information of customers to third parties for the third parties' direct marketing purposes if the customer has exercised an option that prevents that information from being disclosed to third parties for those purposes, <u>as long as the business maintains and discloses the policies, the business may comply with subdivision (a) by notifying the customer of his or her right to prevent disclosure of personal information, and providing the customer with a cost-free means to exercise that right.</u>

<u>Id.</u> § 1798.83(c) (emphasis added).

**2. RODALE'S WEBSITE**

Baxter attaches various screen shots of the Runner's World website as exhibits to her complaint.  (Compl., Ex. 1 [Introductory Page Screen Shot].)  A link titled "Privacy Rights/Community Guidelines" appears at the bottom of that web page.  (<u>Id.</u>)  Users who click that link are taken to another web page entitled "Your Privacy Rights," a screen shot of which is also attached to the complaint.  (<u>Id.</u>, Ex. 2 [Your Privacy Rights Page Screen Shot].)  That page contains a section entitled "What information do you collect about me?", which discloses that "Rodale collects personal identifying information ('PII')," and defines such "PII" to include "your name, postal address, e-mail address, telephone and cell phone numbers, wireless service provider, and all other information you provide to us."  (<u>Id.</u>)  That web page also contains a section entitled "Your Privacy Rights," which informs consumers that:

> From time to time, we make your PII available to other reputable businesses whose products or services might be of value to you.  If you do not want us to share your PII with other companies or organizations, please let us know by accessing the form at http://www.rodale.com/cs/privacy.html, by calling us at 866-387-0509, or writing to us at Customer Service, Rodale Inc., 400 South Tenth Street, Emmaus, PA 18098.

(<u>See</u> Compl., Ex. 2 [Rodale Privacy Policy] at 3.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-00585 GAF (AGRx) | Date | August 29, 2012 |
|---|---|---|---|
| Title | Charlotte Baxter v. Rodale, Inc. | | |

**3. ANALYSIS**

Rodale contends that, in accordance with the statute's plain language and legislative history, the Act should be interpreted to provide for two, completely <u>alternative</u> means of compliance. (Mem. at 5.) First, pursuant to subsections (a) and (b) of section 1798.83, businesses may provide consumers with disclosures concerning personal information that the business shares with third parties, and how to obtain that information. Cal. Civ. Code § 1798.83(a)–(b). Second, pursuant to subsection (c)(2) of section 1798.83, businesses may provide consumers with a cost-free method of requesting that the company not share this information with third parties. <u>Id.</u> § 1798.83(c). Rodale contends that its privacy policy takes the second route, complying with subsection (c), and that subsections (a) and (b) are therefore inapplicable.

In particular, Rodale contends that "subsection (b)(1) is simply the mechanism by which a business is required to 'deliver requests pursuant to subdivision (a),'" and that it would therefore "make no sense to require a business to provide consumers with notice of how to obtain information required by subsection (a) if the business is not required to provide the information in subdivision (a) at all." (Mem. at 6.) Further, Rodale contends that subsection (c) "effectively functions as an 'on/off' switch," and that "so long as a subject company adopts and discloses a cost-free opt-out policy, it complies with the Act." (<u>Id.</u>) Rodale notes that subsection (c) "requires only that a subject business 'adopt' a policy of allowing customers to opt-out of the sharing of their personal information, and to 'notify' the customer of a cost-free means of exercising that option in 'its privacy policy.'" (<u>Id.</u>)

Baxter, by contrast, contends that subsection (c)(2) does not "excuse Rodale of its basic duty under subdivision (a) to respond to customer requests for information," but rather gives a business "the ability to provide a different substantive response than identifying the persons with whom it shared information and the nature of the information shared." (Opp. at 2.) Second, Baxter contends that Rodale has failed to comply with subdivision (b), which she argues imposes independent obligations from subdivision (a), in particular the designation of a method for customers to deliver requests and the disclosure to customers of their rights under the Act. (<u>Id.</u>) Finally, Baxter contends that Rodale has failed to comply even with subdivision (c)(2) because its privacy policy never "informs customers . . . that its official policy is not to share personal information where the customer opts out or, critically, that the customers have the <u>right</u> to opt out in the first place." (<u>Id.</u>)

The Court finds these questions of statutory interpretation largely academic. Based on the allegations contained in the complaint, the Court concludes that Rodale has complied not only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-00585 GAF (AGRx) | Date | August 29, 2012 |
|---|---|---|---|
| Title | Charlotte Baxter v. Rodale, Inc. | | |

with subsection (c)(2), but also with whatever provisions of subsections (a) and (b) remain operative.

Admittedly, the statute contains significant ambiguity as to whether providing customers with the information specified in subsection (c)(2) entirely precludes operation of subsections (a) and (b), as Rodale contends, or whether the language "may comply with subdivision (a)" merely refers to an alternative response the company may offer upon being contacted by customers. The statute reads naturally either way, and that question would be both difficult and dispositive had Rodale, for example, merely informed its customers that they could opt-out of information sharing and provided them with online forms to do so.

But, perhaps because of this confusion, Rodale has gone beyond the strict language of subsection (c)(2). Rodale not only "adopts and discloses to the public, in its privacy policy, a policy . . . of not disclosing the personal information of customers to third parties for the third parties' direct marketing purposes if the customer has exercised an option that prevents that information from being disclosed to third parties for those purposes," as well as "notif[ies] the customer of his or her right to prevent disclosure of personal information, and provid[es] the customer with a cost-free means to exercise that right," Cal. Civ. Code § 1798.83(c)(2), but also provides customers with an address and telephone number with which to submit requests pursuant to subsection (a). Even under Baxter's proposed reading of the statute, under which subsection (c)(2) provides for an alternative response to customer requests, the complaint has not alleged violations of the Act. Baxter contends that "[a]ccepting Rodale's interpretation would allow businesses to ignore customer inquiries under subdivision (a) altogether . . . ." (Opp. at 8.) But Baxter has not alleged that Rodale ever did ignore such requests, and the allegations contained in the complaint make clear that Rodale provided the telephone number and address pursuant to which such inquiries could be made.

Similarly, Rodale has complied with any potential obligations under subsection (b). Rodale satisfies subsection (b)(1) by "designat[ing] a mailing address, electronic mail address . . . [and] a toll-free telephone number . . . to which customers may deliver requests pursuant to subdivision (a)," as well as subsection (b)(1)(B) by "describ[ing] a customer's rights pursuant to this section" – namely that they can opt-out of having their information shared – and "provid[ing] the designated mailing address, e-mail address, as required, or toll-free telephone number or facsimile number, as appropriate." Id. § 1798.83(b)(1)(B). Thus, even if Baxter is correct that compliance with subsection (c)(2) does not exempt Rodale from compliance with the rest of the statute, there is no claim on the alleged facts.

**LINK:** 24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-00585 GAF (AGRx) | Date | August 29, 2012 |
|---|---|---|---|
| Title | Charlotte Baxter v. Rodale, Inc. | | |

Finally, Baxter contends that Rodale fails to comply with subsection (c)(2) because the privacy policy described above only notifies customers of the "ability" to opt-out of having their information shared, rather than their "right" to do so. That reading stretches the statute's language too far, and the Court will not import an essentially semantic distinction into the Act so as to create a mine field for violations. Once a business has decided to comply with the Act through subsection (c)(2), the customer's "rights" are merely to opt-out of having their information shared. The Act cannot fairly be read to require that businesses recite to customers hypothetical rights they would have enjoyed had the business complied with the law in an alternative fashion.

For these reasons, the Court finds that Baxter has not stated a claim for violation of the Act. Accordingly, the claim for violations of the Act, as well as the unfair competition claim, which is entirely predicated on underlying violations of the Act, must be **DISMISSED with leave to amend**.

### III.
### CONCLUSION

The Court concludes that the motion should be **GRANTED**. The claims contained in the complaint are **DISMISSED with leave to amend**. Failure to file an amended pleading by the close of business on **Friday, September 14, 2012** will be deemed consent to dismissal of the action **with prejudice**.

**IT IS SO ORDERED.**